UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>　　　　　　Debtor. | )<br>)<br>)　　Chapter 11<br>)<br>)　　Case No. 12-19882 (HJB)<br>)<br>)<br>) |

**CHAPTER 11 TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT
WITH THE TENNESSEE BOARD OF PHARMACY AND TENNESSEE DEPARTMENT
OF HEALTH, AND REQUEST TO LIMIT NOTICE**

Paul D. Moore, the duly appointed chapter 11 Trustee (the "Trustee") of New England Compounding Pharmacy, Inc. (the "Debtor" or "NECC"), hereby moves this Court (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, approving a Proposed Settlement Agreement and Order (the "Settlement Agreement") by and among, the Trustee, Barry J. Cadden ("Mr. Cadden"), the Division of Health Related Boards of the Tennessee Department of Health (the "Division") and the Tennessee Board of Pharmacy (the "Pharmacy Board"), and requesting that this Court limit notice of this Motion consistent with the notice procedures requested by the Trustee in connection with certain other motions pending before this Court. In support of this Motion, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.　If approved and consummated, the Settlement Agreement will finally resolve parallel administrative proceedings through which the Pharmacy Board and the Division seek civil penalties against NECC and Mr. Cadden for alleged violations of certain Tennessee statutes and regulations governing the practice of pharmacy and will liquidate claims that otherwise would have required (likely expensive and protracted) litigation. Most importantly, the

DM3\2909164.2

Settlement Agreement subordinates the Pharmacy Board and Division's allowed claim to those of, *inter alia*, the individuals who have suffered death, grievous injuries and illnesses from the administration of allegedly contaminated medications compounded by NECC, resolving the Tennessee proceedings without diminishing the funds available to those persons. Accordingly, the Trustee submits that the proposed settlement is fair and equitable and decidedly in the best interests of NECC, its creditors and its estate. Similarly, the Pharmacy Board and the Division sought to impose substantial fines personally against Mr. Cadden which would have directly impacted his ability to fund his proposed settlement with the Trustee. After reviewing Mr. Cadden's pending settlement agreement and satisfying themselves that Mr. Cadden has committed substantial resources to the settlement with the Trustee, the Pharmacy Board and the Division agreed, in the Settlement Agreement with the Trustee, to release their claims against Mr. Cadden rather than impair the Trustee's settlement with Mr. Cadden or otherwise divert from that settlement sums which otherwise would be paid to individuals who suffered those deaths and injuries.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105 and 363 and Federal Rule of Bankruptcy Procedure 9019.

## BACKGROUND

3.      On December 21, 2012 (the "Petition Date"), NECC filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code.

4.      On January 24, 2013, this Court entered an order [Docket No. 92] appointing a chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code.

5.  On January 25, 2013 (the "Appointment Date"), the United States Trustee (the "UST") filed an Application for and Certificate of Appointment of Chapter 11 Trustee [Docket No. 98] (the "UST Application") requesting the appointment of the Chapter 11 Trustee. The UST Application was granted by order of this Court [Docket No. 99] entered the same day. Thereafter, on February 1, 2013, the Chapter 11 Trustee filed his Verified Statement Pursuant to Rule 2007.1 of Paul D. Moore in Support of Application for and Certificate of Chapter 11 Trustee [Docket No. 111] (the "Statement").

A.  **The Debtor's Prepetition Operations**

6.  Prior to the Petition Date, NECC operated as a compounding pharmacy. Beginning in September 2012, reports began to surface of several patients who contracted fungal meningitis (the "Outbreak") after receiving injections of preservative-free methylprednisolone acetate ("MPA") compounded by NECC. An investigation was initiated by the Massachusetts Department of Public Health ("MDPH") and, two days later, on September 26, 2012, NECC issued a voluntary recall of three suspect lots, containing 17,646 doses of MPA that NECC had distributed to over 14,000 patients. The Centers for Disease Control and Prevention ("CDC") reported that, as of October 23, 2013, 64 people had died and 751 individuals had fallen ill.[1] Among all the states affected, Tennessee suffered the second highest number of casualties, with 16 deaths and more than 150 reported illnesses. *Id.*

7.  Upon information and belief, on October 1, 2012, the MDPH issued a formal quarantine notice pursuant to M.G.L. ch. 94C, §§ 13 & 189A, and M.G.L. ch. 112, §§ 30 & 42A, requiring NECC to preserve all products used to compound MPA, including products returned

---

[1]  Reported at http://www.cdc.gov/HAI/outbreaks/meningitis-map-large.html#casecount_table. The CDC has not updated the case counts since October 23, 2013 and indicates that further updates to the case counts are not anticipated.

from pharmacies.

8. Upon information and belief, in response to October 2, 2012 findings from the United States Food and Drug Administration ("FDA") and the MDPH, the Massachusetts Board of Registration in Pharmacy (the "MA Board") voted to request a voluntary surrender of NECC's pharmacy license. NECC surrendered its license effective at noon on October 3, 2012 and further instituted a voluntary recall of all of its intrathecal medications, which are designed for injection near the spinal cord or brain.

9. The FDA and the CDC recommended that all health care providers cease using, and remove from inventory, any NECC products. At the behest of the MDPH, NECC issued an immediate recall of all of its products, and Mr. Barry Cadden (president and a director of NECC, who served as Head Pharmacist and Director of Pharmacy at NECC prior to October 2012) and Mr. Glenn Chin (a pharmacist and former employee of NECC) surrendered their Massachusetts pharmacist licenses pending the outcome of the investigation.

10. Proceedings were soon commenced in other states, including Tennessee, to revoke the licenses of, or otherwise take action against, NECC, Mr. Cadden and other (former) NECC employees. On October 12, 2012, NECC voluntarily surrendered its Tennessee pharmacy license. Mr. Cadden followed suit shortly thereafter, surrendering his Tennessee pharmacist license on October 20, 2012. The Pharmacy Board approved the surrender of their licenses at specially-called meetings on October 15 and 23, 2012, respectively.

11. Shortly prior to the Petition Date, NECC suspended the operation of its business. NECC also surrendered its Massachusetts pharmacy license and laid off most of its employees. Mr. Cadden agreed at that time to a voluntary surrender of his Massachusetts pharmacist license. There are ongoing proceedings at the MA Board to revoke the licenses of, or otherwise take

action against, Mr. Cadden, Mr. Chin and others. The MDPH also has temporarily barred former NECC pharmacists from practicing pharmacology.

12. On December 11, 2012, the Division and the Pharmacy Board, through the Office of General Counsel of the Tennessee Department of Health, commenced administrative proceedings against both NECC and Mr. Cadden seeking civil penalties for alleged violations of Tennessee regulations and statutes in connection with the Outbreak.

13. Upon information and belief, there remain ongoing criminal investigations involving some or all of the former owners and employees of NECC. Additionally, upon information and belief, multiple state regulatory agencies are seeking to compel former NECC pharmacists to surrender, permanently, their licenses. The proposed Settlement Agreement seeks to resolve the claims asserted by the Division and the Pharmacy Board against the Trustee and Mr. Cadden on account of the alleged regulatory and statutory violations.

14. In addition to the criminal investigations and regulatory proceedings, the Outbreak resulted in potentially tens of thousands of claims from personal injury claimants against NECC and others. NECC claims it initiated this Chapter 11 case in response to the volume and wide geographic distribution of cases it confronted. As of March 5, 2014, 322 separate lawsuits have been joined in the multi-district litigation pending in the United States District Court for the District of Massachusetts, and are pending before Judge Zobel ("MDL Action").[2] In addition, prior to the January 15, 2014 bar date for filing of claims in this case, some 3,300 claims asserting injury from injections of MPA have been submitted to the Trustee's claims and noticing agent, Donlin, Recano & Co. (generally, collectively with the pending lawsuits, the "Civil Actions").

---

[2] Case No. 1:13-md-02419-FDS, *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*.

15. The Trustee hopes to achieve a global settlement of the Civil Actions through a chapter 11 plan that would distribute estate assets to personal injury claimants and other creditors. The Trustee has recently filed motions seeking this Court's approval of the proposed settlement of estate claims against certain NECC insiders, NECC's insurers, and NECC's landlord and its insurer, which, if approved, are projected to bring approximately $100 million into the estate. This represents an important first step in the plan process. Approval of the Settlement Agreement would facilitate the Trustee's efforts by resolving claims against the estate while preserving the funds that will ultimately be made available to victims of the Outbreak.

## PROPOSED COMPROMISE

16. The Trustee, in consultation with the Official Committee of Unsecured Creditors (the "Committee") and the Plaintiffs' Steering Committee established in the MDL Action (the "PSC"), has entered into the Settlement Agreement to resolve the proceedings commenced by the Division and the Pharmacy Board against NECC's bankruptcy estate and Mr. Cadden. A copy of the Settlement Agreement is attached hereto as Exhibit B. The essential terms of the Settlement Agreement, which is subject to entry of an order approving this Motion, are summarized as follows:[3]

- Permanent Surrender of Licenses: Any and all licenses granted by the Pharmacy Board to NECC or Mr. Cadden shall be deemed to be voluntarily and irrevocably surrendered.

- Resolution of Proceedings: Any and all proceedings against NECC and Mr. Cadden and available to the Division, the Pharmacy Board or the State of Tennessee relating to the subject matter of the currently pending administrative proceedings, shall be, and are, conclusively resolved pursuant to the terms of the Settlement Agreement.

---

[3] The description of the Settlement Agreement in this Motion is only a summary. The Settlement Agreement controls in all instances to the extent the summary is incomplete, inaccurate or conflicts with the Settlement Agreement. Parties in interest should review the Settlement Agreement in its entirety as to all of its terms and conditions.

- Allowed Claim: In full satisfaction of any and all fines, penalties or assessments available to the Pharmacy Board against NECC or Mr. Cadden, the Pharmacy Board shall receive an allowed general unsecured claim in the amount of $5,000,000 (the "Settlement Amount"), **which claim shall be subordinate, for purposes of voting and distribution, to the claims of tort claimants and other general unsecured creditors of NECC**. Additionally, to the extent other states assert claims under their applicable regulatory schemes and such claims are settled for an allowed general unsecured claim subject to the same subordination as described in the immediately preceding sentence, such claims will be satisfied from the Settlement Amount on a pro rata basis.[4]

- Dismissal of Administrative Proceedings: The administrative proceedings commenced by the Pharmacy Board and the Division, which currently remain pending, shall be dismissed with prejudice. Each party shall bear its own costs.

## ARGUMENTS AND AUTHORITIES

### A. Standard for Determining Motion

17. Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, this Court has authority to approve a compromise or settlement. *See* Fed. R. Bankr. P. 9019(a). The decision to approve a settlement or compromise lies within the discretion of the bankruptcy court, and is warranted when the settlement is found to be reasonable and fair in light of the particular circumstances of the case. *See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). In evaluating whether a settlement is fair and reasonable, a bankruptcy court need not be convinced that the settlement is the best possible compromise. Rather a settlement or compromise should be approved as fair and reasonable as long as it does not "fall below the lowest point in the range of reasonableness." *In re Healthco Int'l, Inc.*, 136 F.3d 45, 51 (1st Cir. 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). The Trustee is better situated than is any individual creditor to determine whether a settlement is in the best interests of the estate, and his informed judgment,

---

[4] The Trustee believes that the only such claim was filed by the Tennessee authorities.

7

after reasonable investigation, to settle and avoid the inherent risks, delays and expense of prolonged litigation is entitled to "wide latitude" from an inquiring court. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632, 635 (1st Cir. 2000) (citing *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l., Inc.)*, 136 F.3d 45, 50 – 52 (1st Cir. 1998); *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir. 1992)).

18.     When evaluating a proposed compromise, a bankruptcy court must assess and balance the value of the claim that is being compromised against the value to the estate by virtue of the compromise proposed. Bankruptcy courts consider the following factors in determining whether the proposed settlement is in the best interest of the debtor's estate: (1) the probability of success in the litigation being compromised; (2) the difficulties to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay in pursuing the litigation; and (4) the paramount interests of the creditors, and a proper deference to their views. *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, supra; Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also In re Martin*, 91 F.3d 289 (3d Cir. 1996).

**B.     The Proposed Compromise is Fair and Reasonable and Should be Approved**

19.     The Trustee submits that the proposed compromise embodied in the Settlement Agreement is fair and reasonable and should be approved. The Settlement Agreement is the product of good faith, arm's-length negotiations, resolves pending administrative proceedings against NECC, and provides certainty as to the amount of the claim to be allowed against NECC's estate. It also resolves competing claims against Mr. Cadden which likely would have impaired his proposed settlement with the Trustee or, in any event, significantly reduced the amount available to Mr. Cadden to fund a settlement with the Trustee for the benefit of NECC's creditors.

8

20. In considering the specific *TMT* and *Jeffrey v. Desmond* factors, and the circumstances of this case, the Trustee submits that the first factor (likelihood of success on the merits) and fourth factor ("paramount" interests of creditors) weigh particularly strongly in support of the proposed settlement.[5] The Trustee believes that a substantial risk exists that NECC could incur penalties or fines in an amount that exceeds the Settlement Amount if he were to litigate the claims asserted by the Pharmacy Board and the Division. Moreover, the Trustee is mindful that creditors' interests are "paramount," particularly in a case such as this, in which the vast majority of creditors are personal injury claimants who have suffered grievous harm and have incurred and continue to incur substantial medical expenses. The Settlement Agreement is undoubtedly in the best interest of creditors, as it resolves claims against the NECC estate without diminishing the funds available for distribution to victims or diluting the distribution of such funds, and indeed, enhancing them by releasing competing claims against Mr. Cadden. Absent the Settlement Agreement, any claim for amounts awarded to the Division or the Pharmacy Board via administrative proceedings or other litigation would rank *pari passu* with the claims of unsecured creditors, and accordingly would share on a pro rata basis in any distributions made on account of all other general unsecured claims.

21. The contemplated settlement also eliminates the substantial risk to the estate that the pending administrative proceedings, as well as any ongoing criminal investigations or civil litigation, may have collateral consequences that reduce, if not eliminate, the estate's ability to recover on various insurance policies. NECC's insurers already have raised difficult coverage

---

[5] The second factor (difficulties of collection) is not as relevant here, as the Trustee is not seeking to collect funds, but rather to minimize the diminution of estate assets an dilution of distributions to personal injury claimants on account of regulatory claims such as those asserted by the Pharmacy Board and the Division. Further, the Pharmacy Board and Division have agreed to subordinate the allowed claim that they would receive pursuant to the Settlement Agreement, thereby agreeing that they shall only receive a distribution on account of such claim only if personal injury claimants and other general unsecured creditors have recovered in full.

9

issues that might reduce or eliminate the insurers' obligations under the applicable policies. The Trustee has reached agreements, subject to this Court's approval, pursuant to which NECC's insurers will pay in excess of $25 million in the aggregate to NECC's bankruptcy estate and settle the coverage disputes. The Settlement Agreement eliminates any coverage risks that may otherwise be posed by the pending administrative proceedings.

22. Finally, as noted above, the Settlement Agreement was reached in consultation with the Committee and the PSC, and the Committee and the PSC support this Motion and assent to the requested relief. Thus, the Trustee's "proper deference" to the views of the creditors further supports the determination that the contemplated settlement is fair and reasonable and that this Motion should be allowed. *See Jeffery v. Desmond, supra*.

### REQUEST TO LIMIT NOTICE

23. As noted above, the Trustee has recently filed motions seeking this Court's approval of the proposed settlement of estate claims against certain NECC insiders, NECC's insurers, and NECC's landlord and its insurer. If approved, the proposed settlements are projected to bring approximately $100 million into the NECC estate, representing an important first step in the process through which the Trustee intends to confirm a plan providing for meaningful distributions to personal injury claimants and other creditors.

24. In connection with such motions, the Trustee also filed the Chapter 11 Trustee's Motion for Order Designating Manner of Service of 9019 Motions and Approving Form and Manner of Service of Notice of Hearings on 9019 Motions [Docket No. 715] (the "Service Motion"). Pursuant to the Service Motion, the Trustee has requested that this Court limit the administrative and financial burden on the estate by permitting the Trustee to serve full copies of the lengthy settlement motions and related agreements by electronic ECF service only, and to

serve notice of the motions and the hearing thereon upon all known creditors, and certain other specified parties, by mail.[6] The Trustee respectfully requests that this Court limit service of this Motion on the same terms requested in the Service Motion. This Court has scheduled a hearing on the Service Motion for May 30, 2014 at 10:00 a.m. EDT. Accordingly, the Trustee requests that his request to limit notice of this Motion (but not the substantive motion to approve the Settlement Agreement) also be heard at that time.

## CONCLUSION

25. In summary, the Trustee submits that approval of the Settlement Agreement is both beneficial to the estate in resolving the administrative proceedings and appropriate as reflecting the paramount interest of the Debtor's creditors by prioritizing the claims of tort claimants and other general unsecured creditors. The Trustee, therefore, requests that this Court enter an Order in the form attached hereto approving the Settlement Agreement. In an effort to reduce the costs incurred by the estate, thereby preserving funds for ultimate distribution to creditors, the Trustee also requests that this Court limit notice of this Motion as requested herein, and consider such request together with the Trustee's Service Motion at the May 30, 2014 hearing.

**WHEREFORE**, the Trustee respectfully requests that this Court (i) approve this Motion and the Settlement Agreement, attached hereto as Exhibit B, and grant the related relief requested herein, by entering an order substantially in the form attached hereto as Exhibit A, (ii) hear the Trustee's request to limit notice of this Motion at the May 30, 2014 hearing, (iii) limit notice of this Motion on the same terms as set forth in the Trustee's previously filed

---

[6] As detailed in the Service Motion, such notice would advise parties how they may obtain full copies of the pending settlement motions and related agreements.

DM3\2909164.2

Service Motion, and (iv) grant the Trustee such other and further relief as this Court deems just and proper.

Dated:     May 19, 2014               Respectfully submitted,
           Boston, Massachusetts

                                      **DUANE MORRIS LLP**

                                      By: */s/ Jeffrey D. Sternklar*
                                      Jeffrey D. Sternklar  (BBO #549561)
                                      100 High Street, Suite 2400
                                      Boston, MA 02110-1724
                                      Phone: (857) 488-4200
                                      Fax: (857) 488-4201
                                      Email: jdsternklar@duanemorris.com