**Schedule A**

**Other Contributing Parties[1]**

1.  Ameridose, as defined in Section 1.08 of the Plan

2.  The Ameridose Parties, as defined in Section 1.10 of the Plan

3.  ARL, as defined in Section 1.16 of the Plan

4.  Darwin, as defined in Section 1.52 of the Plan

5.  Dr. John M. Mathis

6.  Dr. Robert F. O'Brien

7.  GDC, as defined in Section 1.75 of the Plan

8.  The GDC Released Parties, as defined in Section 1.77 of the Plan

9.  Great American, as defined in Section 1.81 of the Plan

10. High Point, as defined in Section 1.83 of the Plan

11. IGPM, as defined in Section 1.87 of the Plan

12. Insight, as defined in Section 1.93 of the Plan

13. Inspira, as defined in Section 1.97 of the Plan

14. Ironshore Specialty Insurance, as defined in Section 1.104 of the Plan

15. Ironshore, as defined in Section 1.102 of the Plan

16. Juno Assurance, as defined in Section 1.105 of the Plan

17. Landmark, as defined in Section 1.107 of the Plan

18. Lexington Insurance, as defined in Section 1.108 of the Plan

19. Liberty Industries, as defined in Section 1.111

20. Maxum, as defined in Section 1.117 of the Plan

21. Medical Mutual, as defined in Section 1.124 of the Plan

---

[1]   As used in the Confirmation Order, the term "Other Contributing Parties" includes, without limitation, those persons and entities listed on this Schedule A.

22. National Union, as defined in Section 1.131 of the Plan

23. Netherlands Insurance, as defined in Section 1.137 of the Plan

24. North American Elite, as defined in Section 1.141 of the Plan

25. Peerless Insurance, as defined in Section 1.147 of the Plan

26. PMIC, as defined in Section 1.160 of the Plan

27. The PMIC/Maxum Released Parties, as defined in Section 1.161 of the Plan

28. Preferred Mutual, as defined in Section 1.165 of the Plan

29. The Individual GDC Insureds, as defined in Section 1.89 of the Plan

30. UniFirst, as defined in Section 1.210 of the Plan

31. Victory, as defined in Section 1.216 of the Plan

## EXHIBIT A

**Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br>NEW ENGLAND COMPOUNDING<br>PHARMACY, INC.,<br><br>                          Debtor. | Chapter 11<br><br>Case No. 12-19882-HJB |

**THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**NEW ENGLAND COMPOUNDING PHARMACY, INC.**

**DUANE MORRIS LLP**

Paul D. Moore, Esq.
100 High Street
Suite 2400
Boston, MA 02110
Telephone:  (857) 488-4200
Facsimile:  (857) 401-3057

*Chapter 11 Trustee*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Facsimile:  (617) 856-8201


David J. Molton, Esq.
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Official Committee*
*of Unsecured Creditors*

Dated:  May 19, 2015

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION...............................................................1

 1.01  Additional Tort Trust Assets........................................................................1

 1.02  Administrative Expense Claim ....................................................................1

 1.03  Adversary Proceeding..................................................................................1

 1.04  Adversary Proceeding Defendants...............................................................2

 1.05  Affiliate Defendants.....................................................................................2

 1.06  Affiliated Entities.........................................................................................2

 1.07  Allowed........................................................................................................2

 1.08  Ameridose....................................................................................................2

 1.09  Ameridose Excess Policies...........................................................................2

 1.10  Ameridose Parties........................................................................................2

 1.11  Ameridose Policies......................................................................................2

 1.12  Ameridose Primary Policies.........................................................................2

 1.13  Ameridose Settlement Agreement ...............................................................2

 1.14  Ameridose Settlement Payment...................................................................2

 1.15  Appeals Administrator.................................................................................3

 1.16  ARL..............................................................................................................3

 1.17  ARL Affiliates..............................................................................................3

 1.18  ARL Policy...................................................................................................3

 1.19  ARL Settlement Agreement..........................................................................3

 1.20  ARL Settlement Payment.............................................................................3

 1.21  ARL Shareholder.........................................................................................3

 1.22  Bankruptcy Code.........................................................................................3

 1.23  Bankruptcy Court.........................................................................................3

 1.24  Bankruptcy Rules.........................................................................................4

 1.25  Bar Date.......................................................................................................4

 1.26  Bar Date Order.............................................................................................4

 1.27  Business Day................................................................................................4

 1.28  Cash..............................................................................................................4

 1.29  Chapter 11 Case ..........................................................................................4

| | | |
|---|---|---|
| 1.30 | Chapter 11 Trustee | 4 |
| 1.31 | Claim | 4 |
| 1.32 | Claimant | 4 |
| 1.33 | Claims Resolution Facility | 4 |
| 1.34 | Claims Resolution Facility Procedures | 4 |
| 1.35 | Class | 4 |
| 1.36 | Class C Cash | 4 |
| 1.37 | Class C Claims | 4 |
| 1.38 | Class D Claims | 4 |
| 1.39 | Class D Consortium Claim | 5 |
| 1.40 | Class D Estate Claim | 5 |
| 1.41 | Class E Cash | 5 |
| 1.42 | Class E Claims | 5 |
| 1.43 | Collateral | 5 |
| 1.44 | Common Benefit Fund | 5 |
| 1.45 | Conditional Payment | 5 |
| 1.46 | Confirmation Date | 5 |
| 1.47 | Confirmation Hearing | 5 |
| 1.48 | Confirmation Order | 5 |
| 1.49 | Contributing Parties | 5 |
| 1.50 | Contributor and Affiliate Released Claims | 5 |
| 1.51 | Creditor | 5 |
| 1.52 | Darwin | 5 |
| 1.53 | Darwin Policy | 6 |
| 1.54 | Debtor | 6 |
| 1.55 | Disclosure Statement | 6 |
| 1.56 | Disclosure Statement Hearing | 6 |
| 1.57 | Disclosure Statement Order | 6 |
| 1.58 | Disputed | 6 |
| 1.59 | Distribution Record Date | 6 |
| 1.60 | District Court | 7 |
| 1.61 | Drugs | 7 |
| 1.62 | Effective Date | 7 |

1.63    Entity ...................................................................................................7

1.64    Equity Holder ........................................................................................7

1.65    Equity Interest .......................................................................................7

1.66    Escrow Agreement(s) .............................................................................7

1.67    Estate ....................................................................................................7

1.68    Estate Causes of Action ..........................................................................7

1.69    Estate Parties .........................................................................................7

1.70    Estate Representative ..............................................................................7

1.71    Expense Fund .........................................................................................8

1.72    Expense Fund Administrator ...................................................................8

1.73    Expense Fund Amount ............................................................................8

1.74    Final Order ............................................................................................8

1.75    GDC .....................................................................................................8

1.76    GDC Policies .........................................................................................8

1.77    GDC Released Parties .............................................................................8

1.78    GDC Settlement Agreement .....................................................................8

1.79    GDC Settlement Payment ........................................................................8

1.80    General Unsecured Claim ........................................................................9

1.81    Great American .......................................................................................9

1.82    Great American Policies ..........................................................................9

1.83    High Point .............................................................................................9

1.84    High Point Policy ...................................................................................9

1.85    High Point Settlement Agreement ............................................................9

1.86    High Point Settlement Payment ...............................................................9

1.87    IGPM ....................................................................................................9

1.88    Impaired ...............................................................................................9

1.89    Individual GDC Insureds .........................................................................9

1.90    Individual Insureds ...............................................................................10

1.91    Individual NECC Insureds .....................................................................10

1.92    Initial Tort Trust Assets ........................................................................10

1.93    Insight ................................................................................................10

1.94    Insight Policies ....................................................................................10

1.95    Insight Settlement Agreement ................................................................10

iii

1.96    Insight Settlement Payment ..................................................................................10

1.97    Inspira ...................................................................................................................10

1.98    Inspira Policies ......................................................................................................11

1.99    Inspira Settlement Agreement................................................................................11

1.100   Inspira Settlement Payment ...................................................................................11

1.101   Interim Bar Date Order ..........................................................................................11

1.102   Ironshore ................................................................................................................11

1.103   Ironshore Inspira Policies ......................................................................................11

1.104   Ironshore Specialty Insurance ...............................................................................11

1.105   Juno Assurance .......................................................................................................12

1.106   Juno Inspira Policies ..............................................................................................12

1.107   Landmark ................................................................................................................12

1.108   Lexington Insurance ...............................................................................................12

1.109   Lexington Insight Policy ........................................................................................12

1.110   Lexington Inspira Policy ........................................................................................12

1.111   Liberty Industries ...................................................................................................12

1.112   Liberty Industries Policies .....................................................................................12

1.113   Liberty Industries Settlement Agreement ..............................................................12

1.114   Liberty Industries Settlement Payment ..................................................................13

1.115   Liberty Mutual .......................................................................................................13

1.116   Local Rules .............................................................................................................13

1.117   Maxum ....................................................................................................................13

1.118   Maxum Policies ......................................................................................................13

1.119   MDL Court..............................................................................................................13

1.120   MDL Proceeding.....................................................................................................13

1.121   Miscellaneous Secured Claims ..............................................................................13

1.122   Medicaid .................................................................................................................13

1.123   Medicare Act ..........................................................................................................13

1.124   Medical Mutual ......................................................................................................13

1.125   Medical Mutual Policy ...........................................................................................13

1.126   MPA ........................................................................................................................14

1.127   National Contributing Parties .................................................................................14

1.128   National Settlement Administrator(s) .....................................................................14

1.129  National Settlement Agreements ....................................................................14

1.130  National Settlement Payments .......................................................................14

1.131  National Union.............................................................................................14

1.132  National Union Polices .................................................................................14

1.133  NECC ..........................................................................................................14

1.134  NECC Claims...............................................................................................14

1.135  NECC Parties ...............................................................................................14

1.136  NECC Policies .............................................................................................14

1.137  Netherlands Insurance ..................................................................................14

1.138  Netherlands Victory Policies ........................................................................15

1.139  Non-Insurer Contributing Parties ..................................................................15

1.140  Non-Tort Claims ..........................................................................................15

1.141  North American Elite ....................................................................................15

1.142  North American Elite Policies .......................................................................15

1.143  Objection Deadline .......................................................................................15

1.144  Official Committee .......................................................................................15

1.145  Other Contributing Parties ...........................................................................15

1.146  Patient Lists.................................................................................................15

1.147  Peerless Insurance ........................................................................................15

1.148  Peerless Victory Policies...............................................................................16

1.149  Person..........................................................................................................16

1.150  Petition Date.................................................................................................16

1.151  PITWD Addendum ........................................................................................16

1.152  Plaintiffs' Steering Committee ......................................................................16

1.153  Plan .............................................................................................................16

1.154  Plan Proponents ...........................................................................................16

1.155  Plan Supplement ...........................................................................................16

1.156  Plan Supplement Documents .........................................................................16

1.157  Policies ........................................................................................................16

1.158  Post-Effective Date Debtor ...........................................................................16

1.159  Post-Confirmation Officer ............................................................................16

1.160  PMIC ...........................................................................................................17

1.161  PMIC/Maxum Released Parties......................................................................17

1.162   PMIC/Maxum Settlement Agreement ........................................................17

1.163   PMIC/Maxum Settlement Payment ..........................................................17

1.164   PMIC NECC Policies .................................................................................17

1.165   Preferred Mutual .......................................................................................17

1.166   Priority Non-Tax Claim .............................................................................17

1.167   Priority Tax Claim .....................................................................................17

1.168   Priority Claims ..........................................................................................17

1.169   Pro Rata Share............................................................................................17

1.170   Protocol Order ...........................................................................................18

1.171   Provider Claims Resolution Facility(s).....................................................18

1.172   Provider Claims Resolution Facility Procedures ......................................18

1.173   Provider Contributing Parties ...................................................................18

1.174   Provider Settlement Administrator(s).........................................................18

1.175   Provider Settlement Agreements ...............................................................18

1.176   Provider Settlement Payments ...................................................................18

1.177   Resident Tort Trustee .................................................................................18

1.178   Schedules ...................................................................................................18

1.179   Settlement Administrators ..........................................................................18

1.180   Settlement Agreements ...............................................................................18

1.181   Settling National Insurers ..........................................................................18

1.182   Shareholder and Affiliate Released Parties................................................18

1.183   Shareholder Escrow Accounts ...................................................................18

1.184   Shareholder Escrow Agent .........................................................................19

1.185   Shareholder Escrow and Control Agreement .............................................19

1.186   Shareholder Settlement Agreement ............................................................19

1.187   Shareholder Settlement Monies .................................................................19

1.188   Shareholder Settlement Non-QSF Accounts ..............................................19

1.189   Shareholder Settlement Non-QSF Monies..................................................19

1.190   Shareholder Settlement QSF Account ........................................................19

1.191   Shareholder Settlement QSF Monies..........................................................19

1.192   Shareholders...............................................................................................19

1.193   Subordinated Claims ..................................................................................19

1.194   Supplemental Bar Date ...............................................................................19

1.195    Supplemental Bar Date Notice.......................................................................19

1.196    Supplemental Bar Date Order.......................................................................19

1.197    Tax Code....................................................................................................19

1.198    Tennessee Settlement Agreement.................................................................20

1.199    Tort Claims................................................................................................20

1.200    Tort Claimants...........................................................................................20

1.201    Tort Trust...................................................................................................20

1.202    Tort Trustee...............................................................................................20

1.203    Tort Trust Advisory Board...........................................................................20

1.204    Tort Trust Agreement..................................................................................20

1.205    Tort Trust Assets........................................................................................20

1.206    Tort Trust Beneficiaries...............................................................................20

1.207    Tort Trust Certificate..................................................................................20

1.208    Tort Trust Documents.................................................................................20

1.209    Treasury Regulations..................................................................................21

1.210    UniFirst......................................................................................................21

1.211    UniFirst Policies.........................................................................................21

1.212    UniFirst Settlement Agreement....................................................................21

1.213    UniFirst Settlement Payment.......................................................................21

1.214    Unimpaired................................................................................................21

1.215    U.S. Trustee...............................................................................................21

1.216    Victory......................................................................................................21

1.217    Victory Policies..........................................................................................21

1.218    Victory Settlement Agreement ....................................................................21

1.219    Victory Settlement Payment .......................................................................21

1.220    Rules of Interpretation ...............................................................................21

1.221    Computation of Time..................................................................................22

1.222    Governing Law...........................................................................................22

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS......22

2.01    Administrative Expense Claims.....................................................................22

2.02    Deadlines to Assert Administrative Expense Claims. ................................................22

2.03    Priority Tax Claims.....................................................................................23

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................23

3.01    Classification of Claims and Equity Interests ..............................................23

ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS .................................24

4.01    Class A - Priority Non-Tax Claims.................................................................24

4.02    Class B - Miscellaneous Secured Claims .......................................................24

4.03    Class C - General Unsecured Claims .............................................................24

4.04    Class D - Tort Claims ....................................................................................24

4.05    Class E - Subordinated Claims ......................................................................25

4.06    Class F - Equity Interests ..............................................................................25

ARTICLE V. SETTLEMENT OF TORT CLAIMS  AND THE NECC TORT TRUST ............26

5.01    Settlement and Compromise ..........................................................................26

5.02    Exhaustion of Insurance Policies ...................................................................26

5.03    Execution of Tort Trust Agreement ...............................................................26

5.04    Purpose of Tort Trust ....................................................................................26

5.05    Assets of the Tort Trust..................................................................................26

5.06    Governance of the Tort Trust.........................................................................27

5.07    Role of the Tort Trustee ................................................................................27

5.08    Investments ...................................................................................................27

5.09    Fees, Costs and Expenses of the Tort Trust ...................................................28

5.10    Distribution of the Tort Trust Assets .............................................................28

5.11    Resolving Liens Other than Imposed by the Medicare Act and States' Medicaid
and Worker Compensation Statutes................................................................30

5.12    Time of Tort Trust Distributions....................................................................30

5.13    Tax Treatment of Tort Trust ..........................................................................31

5.14    Resolution of the Claims of Minors In Accordance With the Tort Trust ...................33

5.15    Access to Claims Information.........................................................................33

5.16    Distribution of Surplus...................................................................................34

5.17    Payments to Post-Effective Date Debtor .......................................................34

ARTICLE VI. MEANS FOR IMPLEMENTATION AND EXECUTION OF THIS PLAN .......34

6.01    Management of the Post-Effective Date Debtor .............................................34

6.02    Duties and Powers of the Post-Confirmation Officer .....................................35

6.03    Other Actions ................................................................................................37

6.04    Expense Fund .................................................................................................37

6.05    Distributions Under this Plan.........................................................................37

6.06    Disallowance of Multi-Claimant Proofs of Claim .................................................. 38

6.07    Procedures for Treating Disputed Claims. ........................................................... 39

6.08    Closing of the Chapter 11 Case ........................................................................... 39

6.09    Cancellation of Existing Agreements .................................................................. 39

6.10    Continued Corporate Existence ........................................................................... 39

6.11    Effectuating Documents and Further Transactions............................................... 40

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS............................................ 40

7.01    Distribution Record Date ..................................................................................... 40

7.02    Delivery of Distributions and Undeliverable Distributions ................................ 40

7.03    De Minimis Distributions .................................................................................... 41

7.04    Transactions on Business Days............................................................................. 41

7.05    Allocation of Plan Distribution Between Principal and Interest................................ 41

7.06    Withholding and Reporting Requirements .......................................................... 41

ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 42

8.01    Executory Contracts and Unexpired Leases ....................................................... 42

8.02    Insurance Policies and Agreements ..................................................................... 42

8.03    Approval of Rejection of Executory Contracts and Unexpired Leases ................ 42

8.04    Rejection Claims.................................................................................................. 42

8.05    Rejection Claims of Officers and Directors of the Debtor .................................. 43

ARTICLE IX. EFFECTIVENESS OF THIS PLAN .............................................................. 43

9.01    Conditions to Confirmation ................................................................................ 43

9.02    Date of Effective Date ......................................................................................... 43

9.03    Satisfaction of Conditions................................................................................... 43

9.04    Occurrence of Effective Date.............................................................................. 43

9.05    Substantial Consummation Upon Effective Date ............................................... 43

ARTICLE X. EFFECT OF CONFIRMATION ..................................................................... 44

10.01    Vesting of Assets ............................................................................................... 44

10.02    Binding Effect.................................................................................................... 44

10.03    Exculpations and Limitation of Liability............................................................ 44

10.04    Preservation and Non-Waiver of Estate Defenses and Objections and Related Rights Reserved for the Debtor, its Successors in Interest, Creditors and Parties in Interest............................................................................................................... 44

10.05    Releases............................................................................................................. 45

ix

10.06    Injunctions.................................................................................................49

10.07    Preservation of Certain Defenses Based Upon Fault or Comparative Fault...............50

10.08    Covenant Not to Sue ...............................................................................52

10.09    Covenant Not to Sue (Shareholder and Affiliate Released Parties) ...........................52

10.10    Terms of Pre-Plan Injunction and Stays ........................................................52

ARTICLE XI. RETENTION OF JURISDICTION...................................................52

11.01    Jurisdiction of Bankruptcy Court.................................................................52

ARTICLE XII. MISCELLANEOUS PROVISIONS ..................................................54

12.01    Reporting of Shareholder Settlement Payments ...............................................54

12.02    Tax Information to be Provided to Shareholders ..............................................54

12.03    Refunds .................................................................................................54

12.04    Withdrawal of the Reference .....................................................................54

12.05    Dissolution of the Official Committee............................................................55

12.06    Quasi-Judicial Immunity...........................................................................55

12.07    Payment of Statutory Fees ........................................................................55

12.08    Effectuating Documents and Further Transactions............................................55

12.09    Exemption from Transfer Taxes ..................................................................55

12.10    Elimination of Vacant Classes ....................................................................55

12.11    Nonconsensual Confirmation......................................................................55

12.12    Modification of Plan ................................................................................56

12.13    Revocation or Withdrawal of Plan................................................................56

12.14    Severability ...........................................................................................56

12.15    Schedules and Exhibits .............................................................................56

12.16    Successors and Assigns..............................................................................57

12.17    Notices ..................................................................................................57

12.18    No Admission ........................................................................................58

ARTICLE XIII. CONFIRMATION REQUEST ......................................................58

Paul D. Moore, as chapter 11 trustee (the "**Chapter 11 Trustee**") of New England Compounding Pharmacy, Inc., a Massachusetts corporation, the above-captioned debtor (the "**Debtor**") and the Official Committee of Unsecured Creditors (the "**Official Committee**" and together with the Chapter 11 Trustee, the "**Plan Proponents**") propose the following chapter 11 plan (the "**Plan**") pursuant to section 1121(a) of title 11 of the United States Code (the "**Bankruptcy Code**"). This Plan proposes to resolve all Claims against and Equity Interests in the Debtor. *IN PARTICULAR, CREDITORS AND PARTIES IN INTEREST SHOULD REVIEW SECTIONS 10.05 AND 10.06 OF THIS PLAN, WHICH PROVIDE FOR THIRD-PARTY RELEASES AND INJUNCTIONS THAT MAY AFFECT THE RIGHT TO PURSUE CLAIMS AGAINST NON-DEBTOR PARTIES (INCLUDING THE PARTIES DESCRIBED IN SECTION 3.4 OF THE DISCLOSURE STATEMENT AND SCHEDULES 1.127 AND 1.173 OF THIS PLAN) AFTER THE PLAN IS CONFIRMED.* The Plan Proponents reserve the right to, among other things, alter, amend, modify, revoke or withdraw this Plan prior to the Effective Date as set forth in Section 12.12 and 12.13 of this Plan.

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.01    *Additional Tort Trust Assets*.** Any Cash or Cash equivalent realized by the Estate Representative, solely in his capacity as such, after the Confirmation Date from or as a result of Settlement Agreements, including, but not limited, to the Tax Contributions (as defined in the Shareholder Settlement Agreement), and the proceeds of the sale, monetization or liquidation of Estate assets or other assets that the Estate Representative is entitled to sell for the benefit of the Estate in accordance with the Settlement Agreements or Section 6.02 hereof, together with all earnings thereon, less the amount the Estate Representative determines should be reserved as Cash.

**1.02    *Administrative Expense Claim*.** Any right to payment constituting a cost or expense against either of the Debtor or its Estate, that is given administrative priority status pursuant to sections 503(b) and 507(a)(1) and (2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Estate from or after the Petition Date, professional fees and expenses incurred by the Debtor, the Chapter 11 Trustee and the Official Committee, any indebtedness or obligations properly incurred or assumed by the Debtor from or after the Petition Date and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

**1.03    *Adversary Proceeding*.** The adversary proceeding in the Bankruptcy Court in which the Chapter 11 Trustee is asserting various claims and causes of action against the Adversary Proceeding Defendants, and certain other defendants, styled as *Moore v. Cadden, et al.*, Adversary Proceeding No. 13-01040 (Bankr. D. Mass.).

**1.04** *Adversary Proceeding Defendants.* The Shareholders and the Affiliate Defendants.

**1.05** *Affiliate Defendants.* Ameridose, LLC, GDC Properties Management, LLC and Medical Sales Management, Inc.

**1.06** *Affiliated Entities.* The Entities set forth in Schedule 1.06 hereto, affiliates of NECC or the Shareholders.

**1.07** *Allowed.* (i) Any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Chapter 11 Trustee from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed or as to which other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or under and in accordance with this Plan (only to the extent so allowed).

**1.08** *Ameridose.* Ameridose LLC.

**1.09** *Ameridose Excess Policies.* (i) The Commercial Excess/Umbrella Liability Policy PMIC issued to Ameridose, as named insured, under policy number UCL 0083404 04, for the policy period of March 1, 2011 to March 1, 2012; and (ii) the Commercial Excess/Umbrella Liability Policy PMIC issued to Ameridose, as named insured, under policy number UCL 0083404 05, for the policy period of March 1, 2012 to March 1, 2013.

**1.10** *Ameridose Parties.* Ameridose, and any of its directors, officers, members, shareholders, insurers, owners, principals, employees, attorneys, predecessors, successors and assigns, that are released from Claims under the Ameridose Settlement Agreement.

**1.11** *Ameridose Policies.* The Ameridose Excess Policies and the Ameridose Primary Policies.

**1.12** *Ameridose Primary Policies.* (i) The Businessowners Special Policy PMIC issued to Ameridose, as named insured, under policy number BOP 0083404 05, for the policy period of March 1, 2011 to March 1, 2012; and (ii) the Businessowners Special Policy PMIC issued to Ameridose, as named insured, under policy number BOP 0083404 06, for the policy period of March 1, 2012 to March 1, 2013.

**1.13** *Ameridose Settlement Agreement.* The Ameridose LLC, Insurance Settlement, Release and Injunction Agreement dated as of November 24, 2014 by and among the Chapter 11 Trustee, PMIC (but no other Ameridose insurer), and Ameridose, substantially in the form included in the Plan Supplement.

**1.14** *Ameridose Settlement Payment.* Cash in the amount of $10,000,000 to be paid to the Estate pursuant to the Ameridose Settlement Agreement.

**1.15** *Appeals Administrator.* The person appointed pursuant to the Claims Resolution Facility Procedures to provide for an appeal process in and for the Claims Resolution Facility.

**1.16** *ARL.* ARL BioPharma Inc. d/b/a Analytical Research Laboratories. Solely for purposes of the ARL Settlement Agreement and this Plan, and solely with respect to Claims based upon, arising out of, or in some way related to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products compounded by NECC, ARL shall also include all of ARL BioPharma Inc.'s directors, officers, members, the ARL Shareholder, the ARL Affiliates, owners, principals, agents, employees, servants, attorneys, accountants, insiders, purported alter egos, predecessors, successors and assigns, and all Persons alleged to be derivatively liable through any of the foregoing, except to the extent that liability of the foregoing Persons or Entities is based on their relationship to Entities other than ARL.

**1.17** *ARL Affiliates.* DNA Solutions, Inc., The Kupiec Group LLC, Woda Investments LLC, Wasser Investments LLC, Kupiec Family Succession Trust, Kupiec Dakil Investments, LLC, Kreativ LLC, Teal Water Investments LLC, and Green Harvest Investments, LLC, and shall also include all of their directors, officers, members, owners, principals, agents, employees, servants, attorneys, accountants, insiders, purported alter egos, predecessors, successors and assigns.

**1.18** *ARL Policy.* The professional liability insurance policy, policy number LHM731509, effective 10/1/2011 - 10/1/2012 issued by Landmark, as insurer, to ARL.

**1.19** *ARL Settlement Agreement.* That certain Settlement and Release Agreement by and among the Chapter 11 Trustee, ARL and Landmark, dated as of December 4, 2014.

**1.20** *ARL Settlement Payment.* Cash in the amount of $6,400,000, to be paid to the Estate pursuant to the ARL Settlement Agreement.

**1.21** *ARL Shareholder.* The Thomas C. Kupiec Trust, and solely for purposes of the ARL Settlement Agreement and this Plan, and solely with respect to Claims based upon, arising out of, or in some way related to, the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment or distribution of injectable methylprednisolone acetate, cardioplegia solution, or any other drugs or products compounded by NECC, the ARL Shareholder shall also include the ARL Shareholder's settlor, trustee, beneficiaries, Thomas C. Kupiec, his parents, spouse, dependents, children, and other nuclear family members, all other trusts under which the any of them are settlors, trustees, or beneficiaries, and all other Entities in which any of them directly or indirectly hold any legal, equitable, or beneficial interest, except to the extent that liability of the foregoing Persons or Entities is based on their relationship to Entities other than ARL.

**1.22** *Bankruptcy Code.* Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

**1.23** *Bankruptcy Court.* The United States Bankruptcy Court for the District of Massachusetts, having jurisdiction over the Chapter 11 Case.

**1.24    *Bankruptcy Rules.***   The Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

**1.25    *Bar Date.***   January 15, 2014 at 4:00 p.m. (Prevailing Eastern Time).

**1.26    *Bar Date Order.***   In the Chapter 11 Case, the *Order (I) Establishing Deadline for Submitting Proofs of Claim, (II) Approving Certain Additional Requirements and Procedures for Personal Injury Tort and Wrongful Death Claims and (III) Approving Form and Manner of Notice Thereof* dated September 27, 2013, together with all exhibits thereto [Chapter 11 Case Docket No. 582].

**1.27    *Business Day.***   Any day other than a Saturday, a Sunday or any other day on which banking institutions in Boston, Massachusetts are required or authorized to close by law or executive order.

**1.28    *Cash.***   Legal tender of the United States of America.

**1.29    *Chapter 11 Case.***   The case under chapter 11 of the Bankruptcy Code commenced by the Debtor on December 21, 2012 in the Bankruptcy Court and styled as *In re New England Compounding Pharmacy, Inc.*, Case No. 12-19882.

**1.30    *Chapter 11 Trustee.***   Paul D. Moore, solely in his capacity as chapter 11 trustee for the Debtor.

**1.31    *Claim.***   The meaning set forth in section 101(5) of the Bankruptcy Code.

**1.32    *Claimant*.**   A holder of a Claim.

**1.33    *Claims Resolution Facility.***   The Personal Injury and Wrongful Death Claims Resolution Facility established by the Claims Resolution Facility Procedures.

**1.34    *Claims Resolution Facility Procedures*.**   The Claims Resolution Facility Procedures substantially in the form included in the Plan Supplement.

**1.35    *Class.***   Any group of Claims or Equity Interests classified by this Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.36    *Class C Cash.***   Cash in an aggregate amount equal to 90% of the Allowed Class C Claims.

**1.37    *Class C Claims*.**   General Unsecured Claims that are classified under Class C.

**1.38    *Class D Claims.***   Tort Claims that are classified under Class D, including Tort Claims held by any Entity that is subrogated to the rights of a Tort Claimant pursuant to Section 4.04(iii) hereof.

     **1.39**    *Class D Consortium Claim.*  Any Class D Claim arising from loss of consortium.

     **1.40**    *Class D Estate Claim.*  Any Class D Claim filed on behalf of a decedent's estate.

     **1.41**    *Class E Cash.*  The Cash, if any, remaining in the Tort Trust after all Allowed Tort Claims, fees, expenses and any other payments required to be paid or satisfied therefrom have been fully paid or satisfied.

     **1.42**    *Class E Claims.*  Subordinated Claims that are classified under Class E.

     **1.43**    *Collateral.*  Any property or interest in property of the estate of the Debtor subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

     **1.44**    *Common Benefit Fund.*  The common benefit fund to be created pursuant to Order No. 8 of the MDL Court in the MDL Proceeding, dated August 13, 2014 [MDL Proceeding Docket No. 1333].

     **1.45**    *Conditional Payment.*  Any payment made pursuant to section 1395y(b)(2) of the Medicare Act.

     **1.46**    *Confirmation Date.*  The date on which the Clerk of the Bankruptcy Court or, solely in the event that a court of competent jurisdiction determines that the Bankruptcy Court lacks jurisdiction or authority to enter final judgment confirming all or any portion of the Plan, the District Court enters the Confirmation Order.

     **1.47**    *Confirmation Hearing.*  The hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

     **1.48**    *Confirmation Order.*  The order confirming this Plan.

     **1.49**    *Contributing Parties.*  The Shareholders and the Other Contributing Parties.

     **1.50**    *Contributor and Affiliate Released Claims*.  Contributor and Affiliate Released Claims has the meaning set forth in the Shareholder Settlement Agreement.

     **1.51**    *Creditor.*  Creditor has the meaning set forth in section 101(10) of the Bankruptcy Code.

     **1.52**    *Darwin.*  Darwin Select Insurance Company solely in its capacity  as issuer of, or in any other capacity that may arise from or be connected with, the Darwin Policy and as an insurer to Insight (and any other person(s) or entity(ies) that may be insured  under the Darwin Policy) and all of its directors, officers, members, shareholders, owners,  principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting solely in their respective capacities as such.

**1.53    *Darwin Policy*.**  The Insurance Policy issued by Darwin to Insight for the policy period of March 15, 2012 through April 13, 2013 (No. 0307-3978), and any other known or unknown insurance policies issued by Darwin to Insight prior to the Execution Date.

**1.54    *Debtor.***  New England Compounding Pharmacy, Inc., as debtor in the Chapter 11 Case and any successor thereof, including, the Post-Effective Date Debtor (and its representative, the Post-Confirmation Officer) and the Tort Trust (and its representative, the Tort Trustee).

**1.55    *Disclosure Statement.***  The disclosure statement relating to this Plan, including, without limitation, all exhibits thereto, as may be amended or modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.56    *Disclosure Statement Hearing.***  The hearing held by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code to consider approval of the Disclosure Statement.

**1.57    *Disclosure Statement Order.***  The order of the Bankruptcy Court entered pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b) approving the Disclosure Statement.

**1.58    *Disputed.***  With respect to any Claim which has not been Allowed pursuant to this Plan or a Final Order:

(a)    if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Chapter 11 Trustee, the Tort Trustee, the Official Committee or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order;

(b)    if a proof of claim or request for payment of an Administrative Expense Claim, other than applications by professionals under section 330 of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. § 1930, has been filed by the applicable deadline set by the Bankruptcy Court for the same: (i) a Claim or Administrative Expense Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim or Administrative Expense Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim or Administrative Expense Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (iv) a Claim or Administrative Expense Claim for which a timely objection or request for estimation is interposed by the Chapter 11 Trustee, the Official Committee or other party in interest which has not been withdrawn or determined by a Final Order.

**1.59    *Distribution Record Date.***  The date of entry of the Disclosure Statement Order, fixed pursuant to Bankruptcy Rule 3018(a).

**1.60**    ***District Court.***    The Article III court in and for the District of Massachusetts, including, but not limited to, the District Court for the District of Massachusetts.

**1.61**    ***Drugs***.    MPA and other products compounded, designed, marketed, sold, distributed, fabricated, advertised, supplied, produced or formulated by the Debtor.

**1.62**    ***Effective Date.***    The date upon which all conditions to effectiveness set forth in Section 9.02 of this Plan have been satisfied or waived.

**1.63**    ***Entity.***    An individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, or other person; for the avoidance of doubt, "Entity" does not include any Governmental Unit, as defined in the Bankruptcy Code.

**1.64**    ***Equity Holder.***    Holder of an Equity Interest.

**1.65**    ***Equity Interest.***    The interest of any holder of an equity security of NECC represented by any issued and outstanding shares evidencing a present ownership interest in NECC, all other interests in NECC of any type (including, without limitation, warranty, options and instruments subject to conversion to interests), and any claims arising out of or pursuant to such interests.

**1.66**    ***Escrow Agreement(s).***    The escrow agreement(s), if any, entered into by and between an escrow agent, the Chapter 11 Trustee and one or more of the Contributing Parties.

**1.67**    ***Estate.***    The estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**1.68**    ***Estate Causes of Action.***    All of the Estate's claims for relief, causes of action, contested matters and lawsuits, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date, including, without limitation, (i) those arising under chapter 5 of the Bankruptcy Code, (ii) any avoidance or fraudulent transfer or conveyance under applicable state law, and (iii) those relating to the compounding, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold and/or distributed by the Debtor, including, but not limited to, the Drugs, and all insurance policies owned by the Debtor; *provided, however*, that Estate Causes of Action shall not include any causes of action the Estate may hold against any Estate Representative.

**1.69**    ***Estate Parties.***    The Trustee, the Debtor, Estate, the Official Committee, the Estate Representative(s), and each of their respective successors and assigns.

**1.70**    ***Estate Representative.***    The Chapter 11 Trustee or any successor in interest to the Chapter 11 Trustee in such capacity, including but not limited to the Post-Confirmation Officer, whether such successor is appointed under this Plan, the Confirmation Order or otherwise.

**1.71**   *Expense Fund.*   The fund that may be established within the Tort Trust under, and subject to the provisions of, Section 6.04 hereof.

**1.72**   *Expense Fund Administrator.*   The person that may be appointed by the Estate Representative to administer the Expense Fund, solely in his or her capacity as such.

**1.73**   *Expense Fund Amount.*   Cash in such amount as the Estate Representative, in consultation with the Official Committee (if the Official Committee has not been dissolved), determines to be necessary or appropriate to be paid to the Expense Fund Administrator to fund any Expense Fund that may be established within the Tort Trust.

**1.74**   *Final Order.*   An order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the applicable subject matter hereof which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending, or (b) an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending; provided, however, that the possibility that a motion pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9023 and 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

**1.75**   *GDC.*   GDC Properties Management, LLC, and any of its directors, officers, members, managers, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting solely in their respective capacity as such.

**1.76**   *GDC Policies.*   (i) The Commercial Lines Insurance Policy Preferred Mutual issued to GDC, as named insured, under policy number CPP 0150530884 for the policy periods of September 27, 2011 to September 27, 2012, (ii) the Commercial Lines Insurance Policy Preferred Mutual issued to GDC, as named insured, under policy number CPP 0160530884 for the policy periods of September 27, 2012 to September 27, 2013, and (iii) any other known or unknown insurance policies issued by Preferred Mutual to GDC prior to April 30, 2014.

**1.77**   *GDC Released Parties.*   All Persons and Entities released from Claims under the GDC Settlement Agreement.

**1.78**   *GDC Settlement Agreement.*   The GDC Insurance Settlement and Release Agreement dated as of April 30, 2014 by and among the Chapter 11 Trustee, GDC and the Individual GDC Insureds and Preferred Mutual [Chapter 11 Case Docket No. 714-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 970.

**1.79**   *GDC Settlement Payment.*   Cash in the amount of $3,750,000 paid to the Estate pursuant to the GDC Settlement Agreement.

**1.80** *General Unsecured Claim.* General unsecured claims that are not Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claim, Miscellaneous Secured Claims, Tort Claims or Subordinated Claims.

**1.81** *Great American.* Great American E&S Insurance Company and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.82** *Great American Policies.* The following policies issued by Great American for the following time periods:  (a) primary policies identified as (i) policy number PL 2387754 00 with effective dates of 1/20/11 to 1/20/12, (ii) policy number PL 2387754 01 with effective dates of 1/20/12 to 1/20/13, and (iii) policy number PL 2387754 02 with effective dates of 1/20/13 to 1/20/14, together with (b) excess policies identified as (i) policy number XS 2388167 00 with effective dates of 4/18/11 to 1/20/12, (ii) policy number XS 2388167 01 with effective dates 1/20/12 to 1/20/13, and (iii) policy number XS 2388167 02 with effective dates 1/20/13 to 1/20/14.

**1.83** *High Point.* High Point Surgery Center, Surgery Center Associates of  High Point, LLC, and High Point Regional Health f/k/a High Point Regional Health System, d/b/a High Point Regional Hospital, and all of their respective directors, officers, members, shareholders, owners, principals, employees, medical staff, contractors, attorneys, affiliates, parents, subsidiaries, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.84** *High Point Policy.* The Healthcare Organizations Lead Excess & Umbrella Policy, Policy Number 001220600 issued by Ironshore to High Point Regional Health System, as named insured.

**1.85** *High Point Settlement Agreement*.  The Settlement and Release Agreement dated as of December 3, 2014 by and among the Chapter 11 Trustee, High Point, and Ironshore.

**1.86** *High Point Settlement Payment.* Cash in the amount of $3,500,000 paid to the Estate pursuant to the High Point Settlement Agreement.

**1.87** *IGPM.* Image Guided Pain Management, PC, and all of its direct and indirect affiliates and their present and former officers, directors, agents and employees, in their capacities as such.

**1.88** *Impaired.* Any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.89** *Individual GDC Insureds.* Any of GDC's directors, officers, members, managers, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, who are or may be an "insured" under the GDC Policies, including, but not limited to, Gregory Conigliaro and Douglas Conigliaro, each acting solely in his, her, or its respective capacity as such.

**1.90    *Individual Insureds.***   The Individual NECC Insureds and the Individual GDC Insureds.

**1.91    *Individual NECC Insureds***.   Barry J. Cadden, Lisa M. Conigliaro Cadden, Gregory Conigliaro, Carla Conigliaro, Glenn Chin, Christopher Leary, Jill Keough, Gene Svirskiy and Kathy Chin, each solely in his or her capacity as an "insured" under the Maxum Policies and/or the PMIC NECC Policies.

**1.92    *Initial Tort Trust Assets.***   (i) The Shareholder Settlement QSF Monies (less the amount the Tort Trustee, in his capacity as qualified settlement fund administrator, determines should be reserved in the Shareholder Settlement QSF Account), (ii) the National Settlement Payments (less the amount the Estate Representative determines should be reserved as Cash or paid to the Shareholder Settlement QSF Account, which payments shall be deemed to have been made pursuant to this Plan.   As such, these payments will be considered to have been made pursuant to a "court order" necessary to satisfy the requirements of Internal Revenue Code section 468B), (iii) an amount of each of the Provider Settlement Payments to be provided by and in each Provider Settlement Agreement, and (iv) the Estate Causes of Action.

**1.93    *Insight***.   Insight Health Corp.; provided that for the purposes of all releases and injunctions set forth in Sections 10.05 and 10.06 below, "**Insight**" means Insight Health Corp., Insight Health Services Corp., Insight Services Holdings Corp., and all direct and indirect affiliates and their present and former officers, directors, agents and employees, in their capacities as such.

**1.94    *Insight Policies***.   Collectively, the Lexington Insight Policies and the Darwin Policy.

**1.95    *Insight Settlement Agreement.***   The Settlement and Release Agreement dated as of February 12, 2015 by and among the Chapter 11 Trustee, Insight, the Insight Insurers, IGPM, the Doctors, the Virginia Plaintiffs (as defined therein) and Medical Mutual.

**1.96    *Insight Settlement Payment***.   Cash in the amount of $40,000,000 paid to the Estate pursuant to the Insight Settlement Agreement, of which $38,500,000 shall be paid by Insight, Lexington and Darwin, and $1,500,000 shall be paid by Medical Mutual. to reimburse expenses; provided that $4,250,000 of the Insight Settlement Payment will remain in escrow as a holdback to be used exclusively for the satisfaction of settlements and/or judgments related to lawsuits filed and not barred by the appropriate statute of limitations against Insight pending the occurrence of certain conditions as set forth in the Insight Settlement Agreement, after which time the remaining escrowed holdback amounts (if any) will be released as set forth in the Insight Settlement Agreement and such claims shall be channeled to the Insight Claims Resolution Facility.

**1.97    *Inspira.***   Inspira Health Network, Inc. (f/k/a South Jersey Health System, Inc.), Inspira Medical Centers, Inc. (f/k/a South  Jersey Hospital, Inc.) and all of their respective directors, officers, members, shareholders, owners, principals, employees, including, but not limited to Joseph Alessandrini and Paul Abrams, attorneys, affiliates, predecessors, parents, subsidiaries, including, but not limited to, Juno Assurance, successors and assigns, each acting in

their respective capacity as such.  For purposes of this Plan, the affiliates of Inspira are the following:  Inspira Medical Center Woodbury, Inc., Inspira HomeCare & HospiceCare, Inc., Inspira Health Network LIFE, Inc., Inspira Health Network Medical Group, P.C., Inspira Health Network Urgent Care, P.C., Cooper Bone & Joint at Woodbury, P.C., Oak & Main Surgicenter, LLC, Inspira Health Network Foundation Cumberland/Salem, Inc., Inspira Health Network Foundation Gloucester County, Inc., The Kidney Center at Vineland, LLC, The Kidney Center at Millville, LLC, Inspira Help Services, Inc., Inspira Health Partners, LLC, Red Bank Development Corporation, Inspira Health Management Corporation, Juno Assurance, Ltd., Inspira Management Services, LLC, Inspira Health Connections, P.C., Tri-County Cardiovascular Services, P.C., Gloucester County Surgery Center, LLC, Woodbury Medical Center Associates, LLP, Inspira Home Care Services Woodbury, Inc., Advanced MRI II, LLC, Inspira Care Connect, LLC, The Healthy Cumberland Initiative, Inc., and The Healthy Gloucester Initiative, Inc.

**1.98** *Inspira Policies.*  The Ironshore Inspira Policies, the Juno Inspira Policies, and the Lexington Inspira Policies.

**1.99** *Inspira Settlement Agreement.*  The Settlement and Release Agreement dated as of December 3, 2014 by and among the Chapter 11 Trustee, Inspira, Lexington Insurance, and Ironshore Specialty Insurance.

**1.100** *Inspira Settlement Payment.*  Cash in the amount of $16,000,000 paid to the Estate pursuant to the Inspira Settlement Agreement.

**1.101** *Interim Bar Date Order.*  In the Chapter 11 Case, the *Interim Order Regarding Chapter 11 Trustee's Motion for an Order Establishing Bar Dates for Filing Proofs of Claim and for related Relief Concerning Noticing by Notice Intermediaries*, dated July 29, 2013 [Chapter 11 Case Docket No. 412].

**1.102** *Ironshore.*  Ironshore Specialty Insurance Company solely in its capacity  as issuer of, or in any other capacity that may arise from or be connected with, the High Point Policy and as an insurer to High Point (and any other person(s) or entity(ies) that may be insured under the High Point Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting solely in their respective capacities as such.

**1.103** *Ironshore Inspira Policies.*  (i) The Insurance Policy issued by Ironshore Specialty Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 000791702), and (ii) any other known or unknown insurance policies issued by Ironshore Specialty Insurance to Inspira prior to December 3, 2014.

**1.104** *Ironshore Specialty Insurance.*  Ironshore Specialty Insurance Company solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Ironshore Policy and as an insurer to Inspira (and any other person(s) or entity(ies) that may be insured under the Inspira Ironshore Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such. For

purposes of this Agreement, the affiliates of Ironshore Specialty Insurance are the following: Ironshore Insurance Services, LLC, Ironshore Holdings, (US), Inc., Ironshore Specialty Insurance Company, IronHealth, and Ironshore Indemnity.

**1.105   *Juno Assurance*.**  Juno Assurance, Ltd., solely in its capacity as issuer of the Juno Inspira Policies, and all of  its directors, officers,  members, shareholders, owners, principals, employees, attorneys, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.

**1.106   *Juno Inspira Policies*.**  (i) The Healthcare Professional Liability and Healthcare General Liability Insurance Policy issued by Juno Assurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 2011HPLGL02), and (ii) any other known or unknown insurance policies issued by Juno Assurance to Inspira prior to December 3, 2014.

**1.107   *Landmark*.**  Landmark American Insurance Company and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.108   *Lexington Insurance*.**  Lexington  Insurance  Company, solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Lexington Policy, and  as an insurer to Inspira (and any other additional insured under the Lexington Inspira Policy) and Insight (and any other additional insured under the Lexington Insight Policy) and all of Lexington Insurance Company's directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such. For purposes of this Plan, the affiliate of Lexington Insurance is the following: American International Group, Inc. and its direct and indirect subsidiaries.

**1.109   *Lexington  Insight  Policy*.**   Collectively, (i) the Insurance Policy issued by Lexington to Insight for the policy period of March 15, 2012 through April 13, 2013 (No. 6794285), (ii) the Insurance Policy issued by Lexington to Insight for the policy period of March 15, 2012 through April 13, 2013 (No. 6794284), (iii) and any other known or unknown insurance policies issued by Lexington to Insight prior to the Execution Date.

**1.110   *Lexington Inspira Policy*.**  (i) The Excess Healthcare Professional  Liability and Healthcare Umbrella Liability Insurance Policy issued by Lexington Insurance to Inspira for the policy period of 11/1/2011 to 11/1/2012 (No. 6796471), and (ii) any other known or unknown insurance policies issued by Lexington Insurance to Inspira prior to December 3, 2014.

**1.111   *Liberty Industries*.**  Liberty Industries, Inc. and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.112   *Liberty Industries Policies*.**  The Great American Policies.

**1.113   *Liberty  Industries  Settlement  Agreement*.**   The  Settlement  and  Release Agreement dated as of April 16, 2015, by and among the Chapter 11 Trustee, Liberty Industries and Great American.

**1.114** *Liberty Industries Settlement Payment.* Cash in the amount of $1,000,000 paid to the Estate pursuant to the Liberty Industries Settlement Agreement.

**1.115** *Liberty Mutual.* Liberty Mutual Insurance, solely in its capacity as successor-in-interest to Netherlands Insurance and Peerless Insurance.

**1.116** *Local Rules.* The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts, or, in the singular, a specific Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts.

**1.117** *Maxum.* Maxum Indemnity Company, solely in its capacity as issuer of the Maxum Policies.

**1.118** *Maxum Policies.* The Commercial Excess Liability Policies Maxum issued to NECC, as named insured, under policy number EXC 6013127-01 for the period of June 25, 2010 to January 1, 2012, and the Commercial Excess Liability Policy Maxum issued to NECC, as named insured, under policy number EXC 6013127-02 for the period of January 1, 2012 to January 1, 2013.

**1.119** *MDL Court.* The United States District Court, District of Massachusetts, where the MDL Proceeding is pending.

**1.120** *MDL Proceeding.* The multidistrict litigation in the MDL Court entitled *In re New England Compounding Pharmacy, Inc., Products Liability Litigation*, designated as Case No. 1:13-md-2419-RWZ, formed pursuant to the Order of February 12, 2013, by the Judicial Panel on Multidistrict Litigation, pending in the MDL Court.

**1.121** *Miscellaneous Secured Claims.* Any claims against the Debtor secured by Collateral.

**1.122** *Medicaid.* Any medical assistance program jointly financed by the federal and state governments, codified at 42 U.S.C. § 1396, *et seq*., and the regulations promulgated thereunder at 42 C.F.R. § 435.2, *et seq*.

**1.123** *Medicare Act.* The Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, codified at 42 C.F.R. § 411.1, *et seq.*

**1.124** *Medical Mutual*. Medical Mutual of North Carolina solely in its capacity as issuer of, or in any other capacity that may arise from or be connected with, the Medical Mutual Policy and as an insurer to IGPM (and any other person(s) or entity(ies) that may be insured under the Medical Mutual Policy) and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, affiliates, predecessors, parents, subsidiaries, successors and assigns, each acting in their respective capacity as such.

**1.125** *Medical Mutual Policy*. The Physicians' and Surgeons' Professional Liability Insurance Policy issued by Medical Mutual to IGPM for the policy period of 3/1/2012 to

13

3/1/2013 (No. #PG116945), and any other known or unknown insurance policies issued by Medical Mutual to IGPM prior to the Execution Date.

**1.126**   *MPA.*   Methylprednisolone acetate.

**1.127**   *National Contributing Parties.*   The Entities listed at Schedule 1.127 hereto.

**1.128**   *National Settlement Administrator(s).*   The person(s) appointed in and by the Claims Resolution Facility Procedures to facilitate, effectuate and implement the purpose and provisions of the Claims Resolution Facility.

**1.129**   *National Settlement Agreements.*   The settlement agreements between the Chapter 11 Trustee and one or more National Contributing Parties,including, without limitation the Ameridose Settlement Agreement, the ARL Settlement Agreement, the GDC Settlement Agreement, the Liberty Industries Settlement Agreement, the PMIC/Maxum Settlement Agreement, the UniFirst Settlement Agreement and the Victory Settlement Agreement; *provided*, *however*, that National Settlement Agreements shall not include the Shareholder Settlement Agreement.

**1.130**   *National Settlement Payments.*   Any payment funded or to be paid to the Estate by a National Contributing Party pursuant to a National Settlement Agreement, including, without limitation, the Ameridose Settlement Payment, the ARL Settlement Payment, the GDC Settlement Payment, the Liberty Industries Settlement Payment, the PMIC/Maxum Settlement Payment, the UniFirst Settlement Payment and the Victory Settlement Payment; *provided*, *however*, that National Settlement Payments shall not include the Shareholder Settlement Monies.

**1.131**   *National Union*. National Union Fire Insurance Company of Pittsburg, PA, solely in its capacity as UniFirst's insurer under the National Union Policies.

**1.132**   *National Union Polices*. The General Liability Insurance Policy No. GL 244-96-66 issued by National Union to UniFirst for the policy period 10/01/2011-10/01/2012 and Policy No. GL 714-64-38 issued by National Union to UniFirst for the policy period 10/01/2012-10/01/2013.

**1.133**   *NECC.*   Debtor New England Compounding Pharmacy, Inc. a/k/a New England Compounding Company.

**1.134**   *NECC Claims*.   The term NECC Claims shall have the meaning set forth in the Shareholder Settlement Agreement

**1.135**   *NECC Parties.*   The term NECC Parties shall have the meaning set forth in the Shareholder Settlement Agreement.

**1.136**   *NECC Policies.*   The Maxum Policies and the PMIC NECC Policies.

**1.137**   *Netherlands Insurance.*   The Netherlands Insurance Company, solely in its capacity as an issuer of the Netherlands Victory Insurance Policy, and all of its directors,

officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual.

**1.138** *Netherlands Victory Policies.* (i) The Commercial General Liability Insurance Policy issued by Netherlands Insurance to Victory for the policy period of 7/2/12 – 7/2/13 (No. CBP8690539), and (ii) any other known or unknown insurance policies issued by Netherlands Insurance to Victory prior to November 11, 2014.

**1.139** *Non-Insurer Contributing Parties.* Collectively, the Shareholders, the Shareholder and Affiliate Released Parties, Ameridose, ARL, GDC, the Individual GDC Insureds, Liberty Industries, Victory, High Point, IGPM, Insight, Inspira, and UniFirst.

**1.140** *Non-Tort Claims.* Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Miscellaneous Secured Claims, General Unsecured Claims and Subordinated Claims.

**1.141** *North American Elite*. North American Elite Insurance Company, solely in its capacity as UniFirst's insurer under the North American Elite Policies.

**1.142** *North American Elite Policies*. The Insurance Policy No. H2U0000415-00 issued by North American Elite to UniFirst for the policy period 10/01/11-10/01/12 and Policy No. H2U0000415-01 issued by North American Elite to UniFirst for the policy period 10/01/12-10/01/13.

**1.143** *Objection Deadline.* The date set forth in the order of the Bankruptcy Court by which a holder of a Claim or a holder of an Equity Interest or other party in interest may file an objection to confirmation of this Plan.

**1.144** *Official Committee.* The Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, including the members thereof and each of their respective attorney representatives, each in his or her capacity as such.

**1.145** *Other Contributing Parties.* The National Contributing Parties, the Provider Contributing Parties, and any and all Persons or Entities released under the National Settlement Agreements and the Provider Settlement Agreements, including but not limited to, the Ameridose Parties, the GDC Released Parties, and the PMIC/Maxum Released Parties.

**1.146** *Patient Lists*. The lists required to be provided to the Chapter 11 Trustee, counsel to the Official Committee, and lead counsel to the Plaintiffs' Steering Committee pursuant to paragraph 2 of the Interim Bar Date Order.

**1.147** *Peerless Insurance*. Peerless Insurance Company, solely in its capacity as issuer of the Peerless Victory Insurance Policy, and all of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such, and Liberty Mutual.

**1.148** ***Peerless Victory Policies.*** (i) The Commercial Umbrella Liability Insurance Policy issued by Peerless Insurance to Victory for the policy period of 7/2/12 – 7/2/13 (No. CU8691139), and (ii) any other known or unknown insurance policies issued by Peerless Insurance to Victory prior to November 11, 2014.

**1.149** ***Person.*** Person has the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.150** ***Petition Date.*** December 21, 2012.

**1.151** ***PITWD Addendum***. The confidential Personal Injury or Wrongful Death Claim Information Form required by the Bankruptcy Court pursuant to the Bar Date Order to be submitted by all creditors asserting a personal injury tort or wrongful death claim arising from exposure to NECC products.

**1.152** ***Plaintiffs' Steering Committee.*** The committee of plaintiffs' counsel appointed pursuant to order of the MDL Court entered on April 9, 2013, as may be amended by the MDL Court.

**1.153** ***Plan.*** This First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., as may be amended or modified from time to time.

**1.154** ***Plan Proponents.*** The Chapter 11 Trustee and the Official Committee.

**1.155** ***Plan Supplement***. The supplemental appendices to this Plan, filed on February 13, 2015 [Chapter 11 Case Docket No. 1123], February 19, 2015 [Chapter 11 Case Docket No. 1141], February 23, 2015 [Chapter 11 Case Docket No. 1167] and May 7, 2015 [Chapter 11 Case Docket No. 1288], which contain, among other things, draft documents, forms of documents, term sheets or other instruments or signed copies, as the case may be, of the Plan Supplement Documents.

**1.156** ***Plan Supplement Documents***. The documents, forms of documents, term sheets and instruments (including any amendments, supplements or modifications thereto) included in the Plan Supplement and which may be executed, delivered and/or performed in connection with the consummation of this Plan, including, without limitation, the Tort Trust Agreement, the Shareholder Escrow and Control Agreement, the Claims Resolution Facility Procedures, the Provider Claims Resolution Facility Procedures, if any, and the Settlement Agreements.

**1.157** ***Policies***. The Ameridose Policies, the ARL Policy, the GDC Policies, the High Point Policy, the Insight Policies, the Inspira Policies, the Liberty Industries Policies, the NECC Policies, the UniFirst Policies and the Victory Policies.

**1.158** ***Post-Effective Date Debtor***. The Debtor, from and after the Effective Date.

**1.159** ***Post-Confirmation Officer***. Paul D. Moore in his capacity as sole post-confirmation officer of the Debtor or the Post-Effective Date Debtor, as applicable.

**1.160** *PMIC*.  Pharmacists Mutual Insurance Company, solely in its capacity as issuer of the PMIC NECC Policies or the Ameridose Policies, as applicable.

**1.161** *PMIC/Maxum Released Parties*.  All Persons or Entities released from Claims under the PMIC/Maxum Settlement Agreement.

**1.162** *PMIC/Maxum Settlement Agreement*.  The Plan Support and Settlement Agreement dated as of May 2, 2014, by and among the Chapter 11 Trustee, PMIC, Maxum and the Individual NECC Insureds [Chapter 11 Case Docket No. 714-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 971.

**1.163** *PMIC/Maxum Settlement Payment*.  Cash in the amount of $25,200,000 paid to the Estate pursuant to the PMIC/Maxum Settlement Agreement.

**1.164** *PMIC NECC Policies*.  The Special Businessowners Policy PMIC issued to NECC, as named insured, under policy number BOP 0068490 07, the Commercial Umbrella/Excess Liability Policy PMIC issued to NECC as named insured under policy number UCL 0068490 07, both with a policy period of January 1, 2011 to January 1, 2012, the Special Businessowners Policy PMIC issued to NECC as named insured under policy number BOP 0068490 08, the Commercial Umbrella/Excess Liability Policy PMIC issued to NECC as named insured under policy number UCL 0068490 08, both with a policy period of January 1, 2012 to January 1, 2013 and the Individual Pharmacist Professional Liability Policies PMIC issued to Barry J. Cadden (Policy No. PHL 0072481), Lisa M. Conigliaro Cadden (Policy No. PHL 0072480), Glenn Chin (Policy No. PHL 0072483), C. Leary (Policy No. PHL 0122124), G. Svirskiy (Policy No. PHL 0096033), J. Keough (Policy No. PHL 0105223) and K. Chin (Policy No. PHL 0096806) as named insureds.

**1.165** *Preferred Mutual*.  Preferred Mutual Insurance Company, solely in its capacity as issuer of the GDC Policies, and any of its directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting solely in its respective capacity as such.

**1.166** *Priority Non-Tax Claim*.  Any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**1.167** *Priority Tax Claim*.  Any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.168** *Priority Claims*.  Priority Non-Tax Claims and Priority Tax Claims.

**1.169** *Pro Rata Share*.  A proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

17

**1.170   Protocol Order.**   The *Agreed-Upon Order Establishing Protocol for Settlement Negotiations and Communication* [Adversary Proceeding Docket No. 96] entered in the Adversary Proceeding.

**1.171   Provider Claims Resolution Facility(s).**   The claims resolution facility or facilities, if any, established by the Provider Claims Resolution Facility Procedures.

**1.172   Provider Claims Resolution Facility Procedures.**   The Provider Claims Resolution Facility Procedures substantially in the form(s) included in the Plan Supplement.

**1.173   Provider Contributing Parties.**   The Entities listed on Schedule 1.173 hereto.

**1.174   Provider Settlement Administrator(s).**   The person(s) to be appointed in and by the Provider Claims Resolution Facility Procedures to facilitate, effectuate and implement the purpose and provisions of the Provider Claims Resolution Facility(s).

**1.175   Provider Settlement Agreements.**   The settlement agreement(s) entered into between the Chapter 11 Trustee and one or more Provider Contributing Parties on or before the date on which the Plan Supplement is filed, including, but not limited to, the High Point Settlement Agreement, the Insight Settlement Agreement, and the Inspira Settlement Agreement.

**1.176   Provider Settlement Payments.**   Any payment made or to be made to the Estate by a Provider Contributing Party pursuant to a Provider Settlement Agreement.

**1.177   Resident Tort Trustee.**   The Delaware resident trustee appointed by the Chapter 11 Trustee pursuant to the Tort Trust Agreement, including any successor.

**1.178   Schedules.**   The schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

**1.179   Settlement Administrators.**   The National Settlement Administrator(s) and the Provider Settlement Administrator(s).

**1.180   Settlement Agreements.**   The National Settlement Agreements, the Provider Settlement Agreements, and the Shareholder Settlement Agreement.

**1.181   Settling National Insurers.**   PMIC, Maxum and Preferred Mutual, collectively, solely in their capacities as insurers of NECC, the Individual Insureds, or GDC, as applicable.

**1.182   Shareholder and Affiliate Released Parties.**   The Contributor and Affiliate Released Parties, as that term is defined in the Shareholder Settlement Agreement.

**1.183   Shareholder Escrow Accounts.**   The escrow accounts established in the Shareholder Escrow and Control Agreement.

**1.184   Shareholder Escrow Agent.**   Citizens Bank, N.A., as escrow agent appointed pursuant to the Shareholder Escrow Agreement.

**1.185   Shareholder Escrow and Control Agreement.**   The Escrow and Control Agreement dated as of August 20, 2014, by and among the Chapter 11 Trustee, the Shareholders and the Shareholder Escrow Agent, substantially in the form included in the Plan Supplement.

**1.186   Shareholder Settlement Agreement**.   The Plan Support and Funding Agreement dated as of May 2, 2014 by and among the Chapter 11 Trustee, on the one hand, and the Shareholders on the other hand [Chapter 11 Case Docket No. 712-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 972.

**1.187   Shareholder Settlement Monies.**   The monies from time to time in the Shareholder Escrow Accounts, including, but not limited to, the Tax Contributions (as defined in the Shareholder Settlement Agreement).

**1.188   Shareholder Settlement Non-QSF Accounts.**   The Shareholder Escrow Accounts other than the Shareholder Settlement QSF Account, if any.

**1.189   Shareholder Settlement Non-QSF Monies.**   The Shareholder Settlement Monies, if any, from time to time in the Shareholder Settlement Non-QSF Accounts.

**1.190   Shareholder Settlement QSF Account.**   The qualified settlement fund, if any, established pursuant to the Shareholder Escrow and Control Agreement, which may pay any expenses permitted to be paid by a qualified settlement fund under applicable law.

**1.191   Shareholder Settlement QSF Monies.**   The Shareholder Settlement Monies from time to time in the Shareholder Settlement QSF Account.

**1.192   Shareholders.**   Barry Cadden, Lisa Conigliaro Cadden, Gregory Conigliaro and Carla Conigliaro.

**1.193   Subordinated Claims**.   All general unsecured claims, whenever arising, (i) for reimbursement, contribution or indemnity of an Entity that is liable with the Debtor on, or that has secured, the Claim of a Tort Claimant, or (ii) which are subordinated to other general unsecured claims by agreement or by applicable law.

**1.194   Supplemental Bar Date.**   May 5, 2014.

**1.195   Supplemental Bar Date Notice.**   The Notice of Supplemental Deadline for Filing Claims in the Chapter 11 Case, dated March 5, 2014.

**1.196   Supplemental Bar Date Order.**   The endorsed order dated February 24, 2014 [Chapter 11 Case Docket No. 699] establishing the Supplemental Bar Date.

**1.197   Tax Code.**   Title 26 of the United States Code, as amended from time to time.

**1.198   *Tennessee Settlement Agreement.***   The *Proposed Settlement Agreement and Order* dated as of May 12, 2014 among the Chapter 11 Trustee and Barry J. Cadden on one hand, and the Tennessee Board of Pharmacy, on the other hand [Chapter 11 Case Docket No. 729-2], as approved by the Bankruptcy Court at Chapter 11 Case Docket No. 973.

**1.199   *Tort Claims.***   Any and all Claims, causes of action, civil actions and demands for or based on personal injury or wrongful death relating to the compounding, preparation, design, marketing, sale, distribution, fabrication, advertising, supply, production, formulation, use, administration, labeling or ingestion of any product produced, sold or distributed by the Debtor, including, but not limited to, the Drugs (notwithstanding the identity of any subsequent marketer, distributor, retailer, wholesaler, other seller or administrator of such product), including, but not limited to, those civil actions pending in the MDL Proceeding or in any state court; *provided, however*, that Tort Claims shall not include Estate Causes of Action as against the Shareholders and Affiliate Released Parties, including, without limitation, the Estate Claims asserted against the Shareholders and Affiliate Released Parties in the Adversary Proceeding.

**1.200   *Tort Claimants.***   The holders of Allowed Tort Claims, or, in the singular, one such holder.

**1.201   *Tort Trust.***   The trust established pursuant to Section 5.03 of this Plan.

**1.202   *Tort Trustee.***   The trustee of the Tort Trust appointed by the Official Committee and the Plaintiffs' Steering Committee pursuant to the Tort Trust Agreement in accordance with this Plan, to be identified in the Confirmation Order, or any successor.  If the Official Committee and the Plaintiffs' Steering Committee are unable to reach an agreement as to the selection of the Tort Trustee by thirty (30) days before the Confirmation Hearing, then the selection shall be made by the District Court.

**1.203   *Tort Trust Advisory Board*.**   A three (3) member committee comprised of Kimberly Dougherty, Fredric L. Ellis and Harry M. Roth.

**1.204   *Tort Trust Agreement.***   The Tort Trust Agreement to be entered into by the Estate Representative, the Tort Trustee and the Resident Tort Trustee, executed in connection with this Plan, to be included in the Plan Supplement.

**1.205   *Tort Trust Assets*.**   The Initial Tort Trust Assets and the Additional Tort Trust Assets.

**1.206   *Tort Trust Beneficiaries.***   Holders of Allowed Tort Claims, including Entities that are subrogated to the rights of such a Holder of an Allowed Tort Claim pursuant to section 4.04(iii) hereof.

**1.207   *Tort Trust Certificate*.**   The Certificate of Trust forming the Tort Trust.

**1.208   *Tort Trust Documents*.**   The Tort Trust Agreement, the Tort Trust Certificate, the Claims Resolution Facility Procedures, and the Provider Claims Resolution Facility Procedures.

**1.209** *Treasury Regulations.* Regulations (including temporary and proposed) promulgated under the Tax Code by the United States Treasury Department, as amended from time to time.

**1.210** *UniFirst*. UniFirst Corporation and all of its affiliates, subsidiaries, directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacities as such.

**1.211** *UniFirst Policies*. The National Union Policies and the North American Elite Policies.

**1.212** *UniFirst Settlement Agreement*. The Settlement and Release Agreement dated as of February 23, 2015, by and among the Chapter 11 Trustee, UniFirst, National Union and North American Elite.

**1.213** *UniFirst Settlement Payment*. Cash in the amount of $30,500,000 paid to the Estate pursuant to the UniFirst Settlement Agreement.

**1.214** *Unimpaired.* Any Class that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**1.215** *U.S. Trustee.* The Office of the United States Trustee for Region 1.

**1.216** *Victory.* Victory Mechanical Services, Inc., Victory Heating & Air Conditioning Co., Inc., Victory LLC, Victory Heating and Air Conditioning Business Trust, Victory Mechanical Services Business Trust, and all of their respective directors, officers, members, shareholders, owners, principals, employees, attorneys, predecessors, successors and assigns, each acting in their respective capacity as such.

**1.217** *Victory Policies.* The Netherlands Victory Policies and the Peerless Victory Insurance Policies.

**1.218** *Victory Settlement Agreement.* That certain Settlement and Release Agreement by and among the Chapter 11 Trustee, Victory, Netherlands Insurance, and Peerless Insurance, dated as of November 11, 2014.

**1.219** *Victory Settlement Payment*. Cash in the amount of $5,500,000, to be paid to the Estate pursuant to the Victory Settlement Agreement, plus any additional amounts to be paid to the Estate pursuant to the Victory Settlement Agreement.

**B.**      <u>Interpretation; Application of Definitions and Rules of Construction</u>.

**1.220** *Rules of Interpretation.* The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. A term used herein that is not defined herein shall have the meaning

21

assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**1.221   *Computation of Time.***  In computing any period of time prescribed or allowed by this Plan, the provisions of the Bankruptcy Rule 9006(a) shall apply.

**1.222   *Governing Law.***  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, agreement or other document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law thereof.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described below, have not been classified.

**2.01   *Administrative Expense Claims.***  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment or as otherwise provided herein, on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, the Chapter 11 Trustee or the Post-Confirmation Officer (as may be applicable from time to time) shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.  Notwithstanding the foregoing, Administrative Expense Claims that represent liabilities incurred by the Chapter 11 Trustee in the ordinary course of the Debtor's business during the Chapter 11 Case shall be paid in the ordinary course of business and in accordance with any terms and conditions of any agreements relating thereto.

**2.02   *Deadlines to Assert Administrative Expense Claims.***

**(i)   Pre-Confirmation Date Administrative Expense Claims.**  Except for applications by professionals under section 330 of the Bankruptcy Code and fees payable pursuant to 28 U.S.C. § 1930, all requests for payment of Administrative Expense Claims for which an earlier deadline has not been previously set or imposed by Local Rule 3002-1 shall be filed and served on each of the Plan Proponents no later than thirty (30) days after entry of the Confirmation Order.

**(ii)   Professional Fees.**  All applications by professionals retained pursuant to sections 327, 328 and 1103 of the Bankruptcy Code for allowance and payment of fees and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code for final compensation for services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case shall be filed no later than sixty (60) days after the Effective Date.  Such fee applications shall seek approval of all fees and expenses incurred or to be incurred by such professionals on or before the Effective Date and may include an estimate of fees and costs

22

incurred after the Effective Date, including fees and expenses incurred in preparation and resolution of the fee application.  Notwithstanding anything to the contrary contained in the Plan, the Settlement Agreements or the Confirmation Order, the Chapter 11 Trustee's and the Official Committee's post-petition professionals shall have the right to appear and be heard on all matters related to applications for final compensation of professional Persons for services rendered and reimbursement of expenses incurred on or before the Effective Date.

> (iii)    **Statutory Fees.**  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in accordance with Section 12.07 of this Plan without the need to file any request for payment.

> (iv)    **Effect of Failure to Timely File Claim or Request for Payment**.  Any holders of Administrative Expense Claims who are required to file an application or request for payment of such Claims and who do not file such application or request by the applicable deadline shall be forever barred from asserting such Administrative Expense Claim against the Debtor or the Estate, or receiving any distribution on account of such Claim under this Plan.

**2.03    *Priority Tax Claims.***  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, the Post-Confirmation Officer shall pay to each holder of an Allowed Priority Tax Claim, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

# ARTICLE III.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**3.01    *Classification of Claims and Equity Interests.***  The classification of the Claims and Equity Interests listed below shall be for all purposes, including voting, confirmation and distribution pursuant to this Plan.

| **Class** | **Description** | **Status** | **Entitled to Vote** |
|-----------|-----------------|------------|----------------------|
| Class A | Priority Non-Tax Claims | Unimpaired | Deemed to have accepted this Plan |
| Class B | Miscellaneous Secured Claims | Unimpaired | Deemed to have accepted this Plan |
| Class C | General Unsecured Claims | Impaired | Entitled to Vote |
| Class D | Tort Claims | Impaired | Entitled to Vote |
| Class E | Subordinated Claims | Impaired | Entitled to Vote |
| Class F | Equity Interests | Unimpaired | Deemed to have accepted this Plan |