## ARTICLE X.
## EFFECT OF CONFIRMATION

**10.01  *Vesting of Assets.***

(i)     As of the Effective Date, the property of the Estate shall vest in the Post-Effective Date Debtor or such other Entity as provided in this Plan.

(ii)     From and after the Effective Date, the Post-Confirmation Officer or Tort Trustee, as the case may be, may dispose of, or cause to be disposed of, the assets of the Post-Effective Date Debtor and the Tort Trust, respectively, free of any restrictions of the Bankruptcy Code, but in accordance with the provisions, as the case may be, of this Plan and the Tort Trust Documents.

(iii)     As of the Effective Date, all assets of the Post-Effective Date Debtor and the Tort Trust shall be free and clear of all Claims, except as otherwise provided in this Plan or the Confirmation Order.

**10.02  *Binding Effect.***   In accordance with the provisions of section 1141 of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under this Plan, whether or not such Claim or Equity Interest has been filed or asserted against the Debtor and whether or not such holder has accepted this Plan.

**10.03  *Exculpations and Limitation of Liability.***   As of the Effective Date, none of (i) the Chapter 11 Trustee, (ii) the Official Committee or (iii) the members, representatives, accountants, financial advisors, consultants and attorneys of the Entities described in (i) and (ii) of this paragraph shall have or incur any liability to any person for any act taken or omission in connection with or related to the Chapter 11 Case, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof), (ii) the Disclosure Statement or any contract, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan or the Disclosure Statement, or (iii) any distributions made pursuant to this Plan, except for any acts determined by Final Order to have constituted willful misconduct, bad faith or gross negligence. For the avoidance of doubt, the provisions of this Section 10.03 shall not apply to the Shareholders and/or the Affiliate Released Parties and shall not exculpate any of the Shareholders and Affiliate Released Parties from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

**10.04  *Preservation and Non-Waiver of Estate Defenses and Objections and Related Rights Reserved for the Debtor, its Successors in Interest, Creditors and Parties in Interest*.**

(i)     **No Limitation on Defenses, Set-Off or Right to Subordination as to Claims Against the Estate.**   Nothing in this Plan (other than the provisions of Sections 10.03 and 10.05 hereof) the Confirmation Order or the Settlement Agreements shall alter, enhance,

waive, release or otherwise impair or preclude any of the Estate's defenses, rights to set-off and/or rights to compel subordination as to any Claim or Administrative Expense Claim of any type asserted against the Estate, as otherwise allowed by law, including the right to assert as a defense, set-off or subordination, any claim that would ordinarily or otherwise have to be asserted in or brought by a cross-claim, cross-complaint or separate action.

   (ii) **No Limitation on Right to Object to Claims or Administrative Expense Claims.**

    (1) Nothing in this Plan (other than the provisions of Sections 10.03 and 10.05 hereof), the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude the right and ability of (a) the Estate Representative and all his or her successors in interest to object to any Class A, B, C or E Claim or Administrative Expense Claim, (b) the Tort Trustee and all his or her successors in interest to object to any Class E Claim, or (c) the Official Committee or any other Creditor or party in interest to object to any Class A, B, C or E Claim or Administrative Expense Claim (collectively, the "**Permitted Objections**"). The Permitted Objections may include, as part of any objection to any Class A, B, C or E Claim or Administrative Expense Claim, a prayer for denial or disallowance of the Class A, B, C or E Claim or Administrative Expense Claim, reduction in amount by off-set, disgorgement of amounts previously paid and/or equitable subordination, as otherwise allowed by law, on any ground that could have been brought by way of lawsuit, adversary proceeding or contested matter but for (a) the releases contained in the Settlement Agreements, (b) the exculpation contained in Section 10.03 of this Plan (c) the releases and injunctions contained in Sections 10.05 and 10.06 of this Plan, (d) the covenant not to sue contained in Section 10.10 of this Plan or (e) the Confirmation Order.  In addition, the makers of the Permitted Objections may utilize whatever remedies and procedural vehicles are otherwise available under the law, including, if necessary, an adversary proceeding, provided that the makers of the Permitted Objections, consistent with the covenant not to sue contained in Section 10.10 of this Plan, shall not seek any affirmative recovery or relief beyond denial, disallowance, disgorgement of amounts previously paid, reduction or subordination of the Class A, B, C or E Claim or Administrative Expense Claim at issue.  Objections to Class E Claims shall be heard and determined by the Bankruptcy Court.

    (2) Nothing in this Plan (other than the provisions of Sections 10.03 and 10.05 hereof) the Confirmation Order or the Settlement Agreements shall alter, enhance, waive, release or otherwise impair or preclude the right and ability of the Chapter 11 Trustee or other Estate Representative, and all his or her successors in interest, to object to any Claim (including any Class D Claim) either for the purpose of determining the holder of such Claim's eligibility to vote on this Plan or the amount of such Claim.  For the avoidance of doubt, with respect to a Class D Claim, such objection(s), if any, shall not include a prayer for denial or disallowance of the subject Class D Claim.

  **10.05** *Releases.* The releases set forth below are cumulative and not exclusive of one another.

   (i) **Settlement Agreement Releases Supplemented; No Impact on Rights to Object**.  The following releases shall be in addition to and are intended to supplement any releases included in the Settlement Agreements as between the parties to such Settlement

Agreements.  Except as expressly set forth in the Settlement Agreements, nothing in this Plan or the releases set forth herein shall affect any rights of the Chapter 11 Trustee, the Post-Confirmation Officer, any Estate Representative(s) or the Official Committee to object to the allowance, amount, priority or secured status of the claims of any party receiving a release under this Plan as provided in sections 502, 503, 506, 507, 509 or 510 of the Bankruptcy Code, including with respect to any right of setoff or recoupment.

(ii)    **Releases by the Debtor and Estate Representative(s).**  *Except as set forth in Section 10.05(i) of this Plan, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, the Debtor, the Chapter 11 Trustee, the Estate Representative(s) and the Estate shall unconditionally release, and hereby are deemed to forever unconditionally release, the Shareholder and Affiliate Released Parties, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, and the Tort Claimants from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and Estate Causes of Action, whatsoever (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements.*

(iii)    **Releases in Favor of the Debtor and Estate Representative(s).**  *Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each of the Debtor, the Chapter 11 Trustee, the Estate Representative(s), and the Estate shall be forever and unconditionally released from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities (other than the right to enforce the obligations under this Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, any prepetition act or omission of the Debtor, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements.*

(iv)    **Releases by Shareholder and Affiliate Released Parties.**  *Subject in all respects to the provisions of Section 10.04 of this Plan and the Shareholder Settlement Agreement, on the Effective Date, each of the Shareholder and Affiliate Released Parties shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds, Preferred Mutual,*

*and the foregoing Persons' and Entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Shareholder and Affiliate Released Parties to the Debtor or to the Chapter 11 Trustee pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements,  and the contracts, instruments, releases and other agreements and documents delivered thereunder.*

(v)    **Releases in Favor of Shareholder and Affiliate Released Parties (Other than Ameridose)**. *Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than Ameridose), as well as their respective attorneys and advisors (solely in their respective capacities as such), shall be forever and unconditionally released from any and all Tort Claims, Estate Causes of Action, Contributor and Affiliate Released Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that the right to enforce the obligations under the Shareholder Settlement Agreement, the Shareholder Escrow Agreement and this Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder, and the right to enforce the provisions of the Shareholder Settlement Agreement with regard to "Non-Disclosed Assets" (as defined therein), shall be expressly preserved by the Estate Representative in accordance with the terms of the Shareholder Settlement Agreement.*

(vi)    **Releases by Other Contributing Parties**. *Except as to the rights and claims expressly preserved by the Settlement Agreements, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Other Contributing Party including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Shareholder and Affiliate Released Parties, each additional Other Contributing Party, and the foregoing Persons' and Entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or*

*unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Other Contributing Parties to the Debtor pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.*

        **(vii)**   **Releases in Favor of Other Contributing Parties (Other than Ameridose)**. *Except as to the rights and claims expressly preserved by the Settlement Agreements, and subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Other Contributing Party (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual shall be forever and unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in the Estate's favor.*

        **(viii)**   **Releases by Tort Claimants**. *Subject in all respects to the provisions of Section 10.04 of this Plan, on the Effective Date, each Tort Claimant shall unconditionally release, and hereby is deemed to forever unconditionally release each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Other Contributing Parties (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, the Shareholder and Affiliate Released Parties (other than Ameridose), all parties released under the Settlement Agreements, and the foregoing Persons' and Entities' respective attorneys and advisors (solely in their capacities as such) from the Tort Claims, the NECC Claims, the Contributor and Affiliate Released Claims, and any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, this*

*Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation of the Settlement Agreements; provided, however, that this release shall not apply to the right to enforce the obligations under the Plan, the Settlement Agreement, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.*

(ix)   **No Governmental Releases**.  Nothing in the Confirmation Order or this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such Persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such Persons.

### 10.06   *Injunctions.*

(i)   **No Impact on the Rights of the Parties to the Settlement Agreements**. Nothing in this Section 10.06 or otherwise in this Plan or the Confirmation Order, shall affect, release or otherwise limit the rights and duties of the parties to the Settlement Agreements to enforce or comply with the provisions of the Settlement Agreements.  The rights and duties of the parties under the Settlement Agreements are set forth in and shall be governed by the Settlement Agreements.

(ii)   **Injunction in Favor of the Debtor and Estate Representative(s).** **Except as to the rights and claims created or expressly preserved by this Plan, the Settlement Agreements the Shareholder Escrow Agreement, and the Confirmation Order, upon the Effective Date, the Debtor, the Chapter 11 Trustee, and the Estate Representative(s) shall have and be entitled to an injunction forever barring and enjoining all Persons and/or Entities from asserting against the Debtor any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether direct or indirect, contingent or actual, whether liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies, except with regard to any claims and rights expressly reserved pursuant to Section 10.05 above.**

(iii)    **Injunction in Favor of Shareholder and Affiliate Released Parties.**
**Upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and
restrained from commencing, prosecuting, continuing or asserting, either derivatively or
on behalf of themselves, in any court, arbitration proceeding, administrative agency, or
other forum in the United States of America or elsewhere, any and all Claims released
pursuant to Section 10.05 above or under the Shareholder Settlement Agreement, whether
the Person or Entity had actual or constructive notice of the terms of the Shareholder
Settlement Agreement, Plan or Confirmation Order or otherwise, *except that* this
injunction shall not apply to the right of the acting Estate Representative to enforce the
Substitute Lien and the obligations and the acting Estate Representative's rights under the
Shareholder Settlement Agreement, the Escrow Agreement, the Plan, and the
Confirmation Order.**

(iv)    **Injunction in Favor of the Other Contributing Parties.  Except as to
the rights and claims created or expressly preserved by this Plan, the Settlement
Agreements, the Escrow Agreement and the Confirmation Order, upon the Effective Date,
the Other Contributing Parties, including, without limitation, GDC, the Individual GDC
Insureds and Preferred Mutual shall have and be entitled to an injunction forever barring
and enjoining all Persons and/or Entities from asserting against the Other Contributing
Parties any past, present and future rights, interests, obligations, claims, causes of action,
NECC Claims,  damages (including punitive damages), demands (including demands for
contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited
to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any
kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen,
whether contingent or actual, whether direct or indirect, liquidated or unliquidated,
whether statutory or common law, whether asserted or unasserted and whether based on
contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in
law or equity concerning, arising from or relating to any actual or alleged past, present or
future act, omission, defect, incident, event or circumstance from the beginning of the
world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the
Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's
estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements
and/or the Policies.**

**10.07    Preservation of Certain Defenses Based Upon Fault or Comparative Fault**

The release and injunction provisions of this Plan, specifically those in sections 10.05 and
10.06 of this Plan, shall not be deemed to abrogate any defense based upon comparative fault
that may be available under applicable state law to Persons or Entities signatory to the
Stipulations and Agreed Orders dated May 1, 2015 and May 4, 2105 [Chapter 11 Case Docket
Nos. 1270 and 1278], or any supplements thereto, and named as defendants in lawsuits arising
from the actual or alleged design, formulation, compounding, production, labeling, testing,
marketing, advertising, supply, dispensing, sale, shipment, distribution or administration of
injectable methylprednisolone acetate or any other drugs or products compounded, produced,
sold or distributed by NECC.  The release and injunction provisions shall not preclude any such
Person or Entity from naming the Debtor and/or the Tort Trust, as successor in interest to claims
against the Debtor and/or the applicable Non-Insurer Contributing Party(ies), as a party to the

applicable proceeding, for the sole purpose of apportioning liability or otherwise securing a reduction in liability on account of the Debtor's, such Non-Insurer Contributing Party(ies)'s, or the Tort Trust's, as successor in interest to claims against the Debtor and/or the applicable Non-Insurer Contributing Party(ies), fault or comparative fault, subject to and expressly conditioned on the satisfaction of the following conditions:

1.  Neither Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trustee shall be named as a party in any such proceeding.

2.  Neither the Debtor, nor Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trust, nor the Tort Trustee shall be required to enter an appearance in any such proceeding.

3.  No judgment requiring the Debtor, Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, any such Non-Insurer Contributing Party, the Tort Trust, or the Tort Trustee to pay a damages award will be sought or entered against NECC, any such Non-Insurer Contributing Party, Paul D. Moore as the duly appointed Chapter 11 Trustee of NECC in the above-captioned bankruptcy case or the Post-Confirmation Officer, the Tort Trust, or the Tort Trustee in any such proceeding, but, if otherwise permitted by applicable state law, an affirmative defense asserting the comparative fault of the Debtor or any such Non-Insurer Contributing Party, may be asserted.

4.  So long as permitted by applicable state law, any allocation of fault to NECC or any such Non-Insurer Contributing Party shall only be for purposes of reducing such Person or Entity's potential liability pursuant to the principles of comparative fault, and shall not be given preclusive effect, nor any effect whatsoever, other than to reduce such Person or Entity's liability.

5.  Such relief shall be solely to permit such Persons or Entities to assert and prove any right they may have to reduce their potential liability pursuant to the principles of comparative fault, and not to permit, or otherwise authorize, such Persons or Entities to pursue the prosecution of any claims for affirmative or other relief

51

against the Debtor, Paul D. Moore, as the duly appointed
Chapter 11 Trustee of NECC in the Bankruptcy Case or the
Post-Confirmation   Officer,   any   such   Non-Insurer
Contributing Party, the Tort Trust, or the Tort Trustee, in
such tort cases.

Further, the approval of the Plan and the releases and injunctions contained therein or entered
pursuant thereto shall not be construed as precluding any Person or Entity from enforcing any
judgment reduction, credit, or setoff rights otherwise available to it under applicable law for
reduction of damages that may be assessed against any party not a Contributing Party or a
Shareholder and Affiliate Released Party in connection with any lawsuit arising from the actual
or alleged design, formulation, compounding, production, labeling, testing, marketing,
advertising, supply, dispensing, sale, shipment, distribution or administration of injectable
methylprednisolone acetate or any other drugs or products compounded, produced, sold or
distributed by NECC.

**10.08   *Covenant Not to Sue.*** Except as set forth in Sections 10.04 and 10.05 of this Plan
and except as to the rights and claims created or expressly preserved by this Plan, neither the
Chapter 11 Trustee, the Estate Representative, the Debtor, the Tort Trustee nor any successor in
interest will commence or prosecute any lawsuit, adversary proceeding or contested matter that
includes a prayer for damages or for equitable relief against the Settling National Insurers or the
Shareholders or Affiliate Released Parties relating to, concerning or arising from the (i) the
Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's
estate, the Chapter 11 Case, this Plan, the Disclosure Statement, the Settlement Agreements
and/or the Policies.

**10.09   *Covenant Not to Sue (Shareholder and Affiliate Released Parties).*** Each of
Shareholder and Affiliate Released Parties covenants and agrees not to commence or continue
against the Estate Parties any action or proceeding of any nature whatsoever with respect to
claims released by the Shareholder and Affiliate Released Parties in Section 10.05 above and in
the Settlement Agreements, and the Estate Parties covenant and agree not to commence or
continue against the Shareholder and Affiliate Released Parties, any action or proceeding of any
nature whatsoever with respect to Contributor and Affiliate Released Claims.

**10.10   *Terms of Pre-Plan Injunction and Stays.*** Unless otherwise provided in this Plan,
the Confirmation Order or a separate order of the Bankruptcy Court, all injunctions or stays
arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy
Code, or otherwise under applicable law, and in existence on the Confirmation Date, shall
remain in full force and effect until the later of the Effective Date and the date indicated in such
applicable order.

## ARTICLE XI.
## RETENTION OF JURISDICTION

**11.01   *Jurisdiction of Bankruptcy Court.*** Except as otherwise explicitly set forth in this
Plan or the Tort Trust Documents as to those matters which are to be considered and determined
by the District Court pursuant to an order withdrawing the reference as to those matters, the

Bankruptcy Court shall retain original and exclusive jurisdiction of matters arising under, arising out of or related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for all matters, to the maximum extent permitted by law, including for, among other things, the following purposes:

(i)  To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any proceeding relating to an Estate Cause of Action;

(ii)  To consider Disputed Claims, including objections, allowance, classification, priority, compromise, estimation or payment of any Claim, including Class E Claims;

(iii)  To hear and determine all applications under sections 330, 331 and 503(b) of the Bankruptcy Code for allowance and payment of Administrative Expense Claims, including awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(iv)  To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(v)  To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Settlement Agreements, the Confirmation Order or any other order of the Bankruptcy Court;

(vi)  To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(vii)  To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated by any of the foregoing, or any agreement or other document governing or relating to any of the foregoing;

(viii)  To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation;

(ix)  To recover all assets of the Debtor and property of the Estate, wherever located;

(x)  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**(xi)** To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, matters with respect to any taxes payable by a trust established in furtherance of this Plan, including the Tort Trust);

**(xii)** To hear and determine any motions intended to directly or indirectly transfer venue of all or any part of the Chapter 11 Case;

**(xiii)** To hear and determine any other matters related to this Plan, the Disclosure Statement, the Confirmation Order, the Settlement Agreements, the Estate Causes of Action, the Tort Trust Documents and related documents and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

**(xiv)** To enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**12.01** *Reporting of Shareholder Settlement Payments*. Pursuant to Section 10.3(a) of the Shareholder Settlement Agreement, to the fullest extent permitted by law, all Shareholder Settlement Payments shall be characterized and reported for all tax purposes as contributions of capital by the Shareholders in accordance with their respective ownership positions in NECC, and the acting Estate Representative shall timely prepare true and accurate Schedule K-1s containing all information as required by the Tax Code and the IRS to enable the Contributors to apply for and collect tax refunds in accordance with the Shareholder Settlement Agreement.

**12.02** *Tax Information to be Provided to Shareholders*. Pursuant to Section 10.3(b) of the Shareholder Settlement Agreement, the Estate Representative shall provide full and accurate copies of any and all income tax returns, as supplemented or amended, filed on behalf of the Debtor to each Shareholder within fourteen (14) days of filing thereof, as well as any additional related information required by the Shareholders to accurately prepare or amend their personal tax returns and receive "Net Tax Refunds" (as defined in the Shareholder Settlement Agreement), with such returns and related information to be maintained as confidential and subject to the provisions of the Protocol Order.

**12.03** *Refunds*. Pursuant to Section 10.3(d) of the Shareholder Settlement Agreement, all procedural or computational decisions and judgments related to the "Refund Claims," the "Refunds" and "Net Tax Refunds" (as such terms are defined in the Shareholder Settlement Agreement) shall be made so as to (i) maximize the amount of the Refund Claims, the Refunds and the Net Tax Refunds consistent with applicable laws, including, without limitation, the 10-year loss carryback provisions for product liability matters and (ii) accelerate the timing of the filing of the Refund Claims and the receipt of the Refunds and the Net Tax Refunds to the extent reasonably possible and in compliance with applicable laws.

**12.04** *Withdrawal of the Reference*. The rights of the Plan Proponents to move, pursuant to 28 U.S.C § 157(d), Bankruptcy Rule 5011, and Local Rule 5011-1, for a withdrawal of the reference to the Bankruptcy Court of those matters under this Plan or the Tort Trust Documents which are to be considered and determined by the District Court, shall be and hereby

are expressly preserved, and such motion may be made at any time subsequent to the filing of this Plan.

**12.05  *Dissolution of the Official Committee.***  The Official Committee shall dissolve on the Effective Date; *provided*, *however*, that (i) the Official Committee shall continue to exist after the Effective Date for the purposes of opposing any pending appeals of the Confirmation Order and taking any actions related thereto, and the Official Committee's professionals may seek compensation for and reimbursement of expenses related to such opposition and actions, if any, from the Post-Effective Date Debtor, and (ii) after dissolution of the Official Committee, the Official Committee's professionals shall retain their rights to pursue, review and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 2.01 and 2.02 of this Plan.

**12.06  *Quasi-Judicial Immunity*.**  The Confirmation Order shall provide that the Post-Confirmation Officer, the Estate Representative, the Tort Trustee, the Settlement Administrator(s) and the Appeals Administrator are entitled to quasi-judicial immunity to the fullest extent allowed by law in connection with their implementation of the Confirmation Order, this Plan, the Tort Trust Agreement, the Claims Resolution Facility and the Provider Claims Resolution Facilities.

**12.07  *Payment of Statutory Fees.***  On the Effective Date, and thereafter as may be required, the Tort Trustee shall pay all fees payable pursuant to 28 U.S.C. § 1930, including all quarterly fees pursuant to 28 U.S.C. § 1930 that become due after the Effective Date.

**12.08  *Effectuating Documents and Further Transactions.***  The Chapter 11 Trustee, up to the Effective Date, and the Post-Confirmation Officer, subsequent to the Effective Date, are authorized to execute, deliver, file or record such contracts, releases and other agreements or documents and take such actions as the Chapter 11 Trustee or the Post-Confirmation Officer, as the case may be, deem to be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**12.09  *Exemption from Transfer Taxes.***  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any bills of sale, or assignments executed in connection with any disposition of assets contemplated by this Plan (including transfers of assets to and by the Tort Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**12.10  *Elimination of Vacant Classes.***  Any Class that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**12.11  *Nonconsensual Confirmation.***  In the event any Impaired Class of Claims does not accept this Plan in accordance with section 1126 of the Bankruptcy Code, the Plan Proponents shall request that the Bankruptcy Court confirm this Plan in accordance with section

1129(b) of the Bankruptcy Code.  Subject to section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to modify this Plan to the extent that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**12.12   *Modification of Plan.***  The Plan may be amended, modified or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.  In addition, after the Effective Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under this Plan, the Post-Confirmation Officer may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order.  Notwithstanding the foregoing, without the prior express consent of the Shareholder and Affiliate Released Parties and of the Other Contributing Parties, this Plan may not be amended pursuant to this paragraph if after such amendment, the Plan is not in form and substance consistent in all material respects with the Shareholder Settlement Agreement, the National Settlement Agreements and the Provider Settlement Agreements, or if the Plan would no longer include the releases and injunctions in favor of the Shareholder and Affiliate Released Parties and of the Other Contributing Parties set forth in Sections 10.05 and 10.06 of the Plan.

**12.13   *Revocation or Withdrawal of Plan.***  The Plan Proponents, upon their unanimous consent and agreement, reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Plan Proponents take such action, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**12.14   *Severability.***  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation, except to the extent that such holding, alteration or interpretation, invalidates a condition to effectiveness of this Plan, including the releases and injunctions provided for in Sections 10.05 and 10.06.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms, and upon the Effective Date all such provisions are accordingly non-severable.

**12.15   *Schedules and Exhibits.***  The schedules and exhibits to this Plan, including the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein.

**12.16**   ***Successors and Assigns.***   All the rights, benefits and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

**12.17**   ***Notices***.   Any notice required or permitted to be provided to the Chapter 11 Trustee or the Official Committee under this Plan to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in this Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Chapter 11 Trustee, to:

DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Attn:             Paul D. Moore, Esq.
Telephone:    (857) 488-4200
Facsimile:     (857) 401-3057
Email:           pdmoore@duanemorris.com

-and-

DUANE MORRIS LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Attn:             Michael R. Lastowski, Esq.
Telephone:    (302) 657-4942
Facsimile:     (302) 397-2138
Email:           mlastowski@duanemorris.com

if to the Official Committee, to:

BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Attn:             William R. Baldiga, Esq.
                    Kiersten A. Taylor, Esq.
Telephone:    (617) 856-8200
Facsimile:     (617) 856-8201
Email:           wbaldiga@brownrudnick.com
                    ktaylor@brownrudnick.com
-and-

BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Attn:             David J. Molton, Esq.
Telephone:     (212) 209-4800
Facsimile:      (215) 209-4801
Email:           dmolton@brownrudnick.com

**12.18** ***No Admission.***    Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Plan Proponents with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claim classification.

## ARTICLE XIII.
## CONFIRMATION REQUEST

**13.01**   The Plan Proponents request confirmation of this Plan under section 1129(b) of the Bankruptcy Code.

**Schedule 1.06**

**Affiliated Entities**

1.  203 Flanders Road, LLC

2.  205 Flanders Road, LLC

3.  Alaunus Pharmaceutical, LLC

4.  Ameridose, LLC

5.  Cadden Family-2012, LLC

6.  Cardo Properties, LLC

7.  Conigliaro Block, Inc.

8.  Conigliaro Family Investments, LLC

9.  Conigliaro Industries, Inc.

10. GDC Holdings, Inc.

11. GDC Properties Management, LLC

12. Hunter Holdings, LLC

13. L & S Creations, Inc.

14. Medical Sales Management, Inc.

15. Medical Sales Management, SW, Inc.

16. Nationwide Foam, Inc.

17. Nationwide Recycling Sales Management, Inc.

18. Physicians Choice Medical Marketing, LLC

19. Stone House Realty Group, LLC

## Schedule 1.127

## National Contributing Parties[1]

1. Ameridose, as defined in Section 1.08 of the Plan

2. ARL, as defined in Section 1.16 of the Plan

3. GDC, as defined in Section 1.75 of the Plan

4. Great American, as defined in Section 1.81 of the Plan

5. The Individual GDC Insureds, as defined in Section 1.89 of the Plan

6. Landmark, as defined in Section 1.107 of the Plan

7. Liberty Industries, as defined in Section 1.111

8. Maxum, as defined in Section 1.117 of the Plan

9. National Union, as defined in Section 1.131 of the Plan

10. Netherlands Insurance, as defined in Section 1.137 of the Plan

11. North American Elite, as defined in Section 1.141 of the Plan

12. Peerless Insurance, as defined in Section 1.147 of the Plan

13. PMIC, as defined in Section 1.160 of the Plan

14. Preferred Mutual, as defined in Section 1.165 of the Plan

15. UniFirst, as defined in Section 1.210 of the Plan

16. Victory, as defined in Section 1.216 of the Plan

---

[1]    Each National Contributing Party is a National Contributing Party solely in the capacity indicated in the Plan.

**Schedule 1.173**

**Provider Contributing Parties[1]**

1. Darwin, as defined in Section 1.52 of the Plan

2. High Point, as defined in Section 1.83 of the Plan

3. IGPM, as defined in Section 1.87 of the Plan

4. Insight, as defined in Section 1.93 of the Plan

5. Inspira, as defined in Section 1.97 of the Plan

6. Ironshore, as defined in Section 1.102 of the Plan

7. Ironshore Specialty Insurance, as defined in Section 1.104 of the Plan

8. Juno Assurance, as defined in Section 1.105 of the Plan

9. Lexington Insurance, as defined in Section 1.108 of the Plan

10. Medical Mutual, as defined in Section 1.124 of the Plan

11. Dr. John M. Mathis

12. Dr. Robert F. O'Brien

---

[1]    Each Provider Contributing Party is a Provider Contributing Party solely in the capacity indicated in the Plan.

**Exhibit B**

**<u>Plan Confirmation Notice</u>**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

In re:

NEW ENGLAND COMPOUNDING
PHARMACY, INC.,

                    Debtor.

Chapter 11

Case No. 12-19882-HJB

## NOTICE OF ENTRY OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

    **PLEASE TAKE NOTICE** that on May ___, 2015 (the "Confirmation Date") the United States Bankruptcy Court for the District of Massachusetts, Eastern Division (the "Bankruptcy Court") entered an order, dated May ___, 2015 (the "Confirmation Order"), confirming the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. (the "Plan")[1] filed jointly by Paul D. Moore, in his capacity as Chapter 11 Trustee, and the Official Committee of Unsecured Creditors (together, the "Plan Proponents").

    **PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order and the Plan can be obtained (i) at no charge from Donlin, Recano & Co. Inc., (the "Claims and Noticing Agent") the claims and noticing agent, by accessing the following website: http://www.drcdrx.com/cases/caseinfo/necp or (iii) for a fee via PACER at https://ecf.mab.uscourts.gov/.

### Notice of Effective Date

    **PLEASE TAKE FURTHER NOTICE** that pursuant to Section 9.02 of the Plan, the Plan Effective Date shall occur on the later of: (i) the first Business Day following (a) fourteen (14) days after the Confirmation Date, provided that a court of competent jurisdiction has not entered a stay of the Confirmation Order as of such date (in which instance, the Effective Date will not occur until such stay is dissolved) or (b) only if a court of competent jurisdiction determines that the Bankruptcy Court lacks jurisdiction or authority to enter final judgment confirming all or any portion of the Plan, then thirty (30) days after entry of the Confirmation Order by the District Court, provided that a court of competent jurisdiction has not entered a stay of the Confirmation Order as of such date (in which instance, the Effective Date will not occur until such stay is dissolved); and (ii) the first Business Day on which all other conditions to the

---

[1] Unless otherwise noted, all capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Plan.

Effective Date have been satisfied or waived. A separate notice of the occurrence of the Effective
Date will be served on all known holders of Claims and Interests as soon as practicable.

### Deadline for Filing Administrative Expense Claims and Professional Fees

**PLEASE TAKE FURTHER NOTICE** that pursuant to Section 2.02(i) of the Plan, all
requests for payment of Administrative Expense Claims for which an earlier deadline has not
been previously set or imposed by Local Rule 3002-1 shall be filed and served on each of the
Plan Proponents no later than thirty (30) days after entry of the Confirmation Order, unless
otherwise extended by order of this Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Section 2.02(ii) of the Plan, all
applications by professionals retained pursuant to sections 327, 328 and 1103 of the Bankruptcy
Code for allowance and payment of fees and reimbursement of expenses pursuant to section 330
of the Bankruptcy Code for final compensation for services rendered and reimbursement of
expenses incurred in connection with this Chapter 11 Case shall be filed no later than sixty (60)
days after the Effective Date, unless otherwise extended by order of this Court.

### Deadline for Filing Claims Arising from Rejection of Executory Contracts and Unexpired Leases Pursuant to the Plan

**PLEASE TAKE FURTHER NOTICE** that under the terms of Article VIII of the Plan,
on the Effective Date, all executory contracts and unexpired leases to which the Debtor is or may
be deemed a party, except for and other than the Tort Trust Documents, the Settlement
Agreements (including the insurance policy rights assigned to the Debtor pursuant thereto) and
insurance policies issued to, or insurance agreements entered into by, the Debtor prior to the
Petition Date (including, without limitation, any policies covering directors' or officers'
conduct), shall be deemed rejected as of the Effective Date, without the need for any further
action by the Post-Confirmation Officer, except for an executory contract or unexpired lease that
(i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to
the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under
section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

### Deadline for Class A, B or C Claimants to Submit Form W-9

**PLEASE TAKE FURTHER NOTICE** that no distribution shall be made to any
Claimant in Class A, B or C, and the Claimant's Claim shall be disallowed without further order
of the Bankruptcy Court, if such Claimant has not delivered a signed form W-9 to the Post-
Confirmation Officer on or before sixty (60) days after the Effective Date, to the following
address:

Paul D. Moore, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110

**PLEASE TAKE FURTHER NOTICE** that any proofs of claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases, pursuant to the Plan, must be filed with the Claims and Noticing Agent at Donlin, Recano & Co., Inc. P.O. Box 2053, Murray Hill Station, New York, NY 10156, and served upon the Plan Proponents on or before the date that is thirty (30) days after the Confirmation Date, at the following address:

<table>
<tr>
<td>

Paul D. Moore, Esq.
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110

*Chapter 11 Trustee*

and

Michael R. Lastowski, Esq.
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

*Counsel to the Chapter 11 Trustee*

</td>
<td>

William R. Baldiga, Esq.
Kiersten A. Taylor, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111

and

David J. Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, NY 10021

*Counsel to the Official Committee of
Unsecured Creditors*

</td>
</tr>
</table>

Dated: _____ ___, 2015
       Boston, Massachusetts